1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE AND RACISM, INC, <br><br> Plaintiff, <br><br> v. <br><br> STEVE WALKER, in his official capacity as Executive Director of the Washington State Housing Finance Commission, <br><br> Defendant. | No. 2:24-cv-01770-JHC <br><br> MOTION TO DISMISS PLAINTIFF'S COMPLAINT <br><br> NOTE ON MOTION CALENDAR: JANUARY 17, 2025 |

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# **TABLE OF CONTENTS**

I.    INTRODUCTION & RELIEF REQUESTED ................................................................ 1

II.   FACTUAL BACKGROUND ................................................................................ 3

    A.   The Covenant Homeownership Act ........................................................ 4

        1.   The Covenant Homeownership Study ....................................... 5

        2.   The Covenant Homeownership Program .................................. 8

    B.   FAIR's Lawsuit ................................................................................ 10

III.  AUTHORITY & ARGUMENT ................................................................................ 11

    A.   Legal Standard Governing Rule 12(b) Motions ................................... 11

    B.   FAIR Lacks Standing ........................................................................ 12

        1.   Member A lacks standing to sue in her own right. .................. 13

    C.   FAIR's § 1983 Claim Must Be Dismissed .......................................... 19

        1.   FAIR fails to state a § 1983 claim against Executive
            Director Walker. ................................................................. 20

        2.   Executive Director Walker is immune from liability for
            FAIR's claim for nominal damages under § 1983. .................. 22

IV.   CONCLUSION ................................................................................................ 23

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## **TABLE OF AUTHORITIES**

2

3

### **Federal Cases**

4

*Aholelei v. Dep't of Pub. Safety*,
   488 F.3d 1144 (9th Cir. 2007) ............................................................. 23

5

6

*Allen v. Wright*,
   468 U.S. 737 (1984) ............................................................................. 14

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 20

9

10

*Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,
   713 F.3d 1187 (9th Cir. 2013) .................................................... 13, 15

11

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ................................................................ 11

12

13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 11, 21

14

15

*Block v. Wash. State Bar Ass'n*,
   No. C15-2018RSM, 2016 WL 1464467 (W.D. Wash. Apr. 13, 2016) ................................... 22

16

17

*Braunstein v. Arizona Dep't of Transp.*,
   683 F.3d 1177 (9th Cir. 2012) .................................................... 14, 22

18

*Brown v. Morgan*,
   No. C16-5975 RBL-TLF, 2017 WL 3454572 (W.D. Wash. Aug. 11, 2017) ............................ 20

19

20

*Bruckner v. Biden*,
   666 F. Supp. 3d 1237 (M.D. Fla. 2023) .................................................... 16, 18

21

*California Rest. Ass'n v. City of Berkeley*,
   89 F.4th 1094 (9th Cir. 2024) ............................................................. 13

22

23

*Carney v. Adams*,
   592 U.S. 53 (2020) .................................................................. 14, 16, 17

24

25

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ............................................................. 14, 16

26

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ............................................................. 11

27

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – ii
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Citizens for Fair Representation v. Padilla*,
  815 F. App'x 120 (9th Cir. 2020) ........................................................ 17

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985).......................................................................... 19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).................................................................... 14, 15

*Connolly v. Roche*,
  No. 2:14-CV-00024 JWS, 2014 WL 12550553 (D. Ariz. July 30, 2014) ................................ 23

*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) ........................................................ 11

*Dittman v. California*,
  191 F.3d 1020 (9th Cir. 1999) ........................................................ 22

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .......................................................... 12

*Food & Drug Admin. v. All. for Hippocratic, Med.*,
  602 U.S. 367 (2024)................................................................ 12, 13, 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)........................................................................ 13

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)........................................................................ 15

*Hatley v. Mullan*,
  No. C21-820-JCC-MLP, 2021 WL 5283685 (W.D. Wash. Oct. 27, 2021) ...................... passim

*Haygood v. Younger*,
  769 F.2d 1350 (9th Cir. 1985) ........................................................ 20

*Holt v. McDonnell*,
  No. CV 15-9632 R(JC), 2016 WL 7217572 (C.D. Cal. Dec. 12, 2016).................................. 20

*Ivey v. Bd. of Regents*,
  673 F.2d 266 (9th Cir. 1982) .......................................................... 21

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ........................................................ 23

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ............................................................ 3

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – iii
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Kucuk v. Central Wash. Univ.*,
  No. C17-1262JLR, 2018 WL 1570922 (W.D. Wash. Mar. 30, 2018) ........................................ 3

*Lake Cnty. Est., Inc. v. Tahoe Reg'l Planning Agency*,
  440 U.S. 391 (1979) .................................................................................................................. 22

*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014) .................................................................................................... 11

*Loffman v. California Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) ................................................................................... 13, 16, 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................... 12, 15

*Moose Lodge No. 107 v. Irvis*,
  407 U.S. 163 (1972) .................................................................................................................. 14

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) .................................................................................................. 19

*N. Carolina All. for Retired Americans v. Hirsch*,
  --- F. Supp. 3d ----, No. 5:24-CV-275-D,
  2024 WL 3507677 (E.D.N.C. July 19, 2024) .......................................................................... 16

*Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
  508 U.S. 656 (1993) ........................................................................................................... 13, 15

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................................. 19

*Parratt v. Taylor*,
  451 U.S. 527 (1981) .................................................................................................................. 20

*Pena v. Gardner*,
  976 F.2d 469 (9th Cir. 1992) .................................................................................................... 22

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................................... 22

*Peters v. Lieuallen*,
  693 F.2d 966 (9th Cir. 1982) .................................................................................................... 22

*Platt v. Moore*,
  15 F.4th 895 (9th Cir. 2021) ..................................................................................................... 23

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – iv
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Proctor v. United States*,
    781 F.2d 752 (9th Cir. 1986) .................................................. 12

*Reynaga Hernandez v. Skinner*,
    969 F.3d 930 (9th Cir. 2020) ................................................ 20

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ................................................ 20

*Sato v. Orange Cnty. Dep't of Ed.*,
    861 F.3d 923 (9th Cir. 2017) ................................................ 12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................. 3

*United States v. Hays*,
    515 U.S. 737 (1995) ............................................................ 11

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ............................................................ 14

*Wash. Envtl. Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) .............................................. 12

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
    946 F.3d 110 (9th Cir. 2020) ................................................ 15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .............................................. 11

*Woodard v. Quote Storm Holdings, LLC*,
    No. 23 C 55, 2023 WL 3627719 (N.D. Ill. May 24, 2023) ...... 19

*Zixiang Li v. Kerry*,
    710 F.3d 995 (9th Cir. 2013) ................................................ 11

**Federal Statutes**

28 U.S.C. §§ 2201–2202 ............................................................ 10

42 U.S.C. § 1983 ............................................................... passim

U.S. Const. art. III, § 2 ............................................................ 12

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – v
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**State Statutes**

RCW 43.181.010 ................................................................................................................. 9

RCW 43.181.020 ................................................................................................................. 8

RCW 43.181.030 ................................................................................................................. 5

RCW 43.181.040 ............................................................................................... 4, 5, 7, 8, 17

RCW 43.181.900 ................................................................................................................. 4

**Federal Rules**

Fed. R. Civ. P. 12(b)(1), (6) ........................................................................ 3, 4, 11, 16, 17

Fed. R. Civ. P. 12(h)(1), (3) ............................................................................................. 12

Fed. R. Evid. 201 ................................................................................................................ 3

**Federal Regulations**

12 C.F.R. § 1002.8(b)(2) ................................................................................................... 1

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – vi
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

I.     **INTRODUCTION & RELIEF REQUESTED**

Since statehood, Washington residents of color and other marginalized groups have faced widespread discriminatory barriers to homeownership, implemented through State and local governmental policies and practices.[1] Among other things, impacted groups were subjected to land seizures, forced removal, over 50,000 racially restrictive covenants barring people of color and other marginalized groups from purchasing homes and living in specific neighborhoods, exclusionary zoning practices, and racist practices in the State-regulated real estate, lending, and appraisal industries. As a direct result of this pervasive discrimination, entire communities were prevented from buying homes, accessing credit, and building generational wealth.

In the spring of 2023, the Washington Legislature passed the Covenant Homeownership Act ("Act") to support homeownership for those affected by generations of systematic discriminatory housing policies and practices. The Act acknowledges the State's role as both an active and passive participant in generations of discriminatory policies and practices that created barriers to credit and homeownership for historically marginalized communities in Washington, and that these discriminatory actions may continue to impact these communities today. To address this history of discrimination, the Act establishes a special purpose credit program[2] ("Covenant Homeownership Program" or "Program"), based on an evidence-based study ("Covenant Homeownership Program Study" or "Study"), that offers downpayment and closing cost assistance for first-time, low-income homebuyers whose families were impacted by the State's unlawful

---

[1] As local governments are instrumentalities of the State, the term "State" hereafter refers to both State and local government active and passive acts of discrimination.

[2] The Equal Credit Opportunity Act of 1974 empowers states and other entities to establish specific purpose credit programs to benefit a specific class of persons who share common characteristics (for example, race, national origin, or sex). *See* 12 C.F.R. § 1002.8(b)(2). They are an important tool in expanding fair access to credit, particularly for consumers and communities impacted by discrimination.

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 1
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

housing discrimination before 1968, when Congress passed the Fair Housing Act prohibiting discrimination in the sale and financing of housing.

The Washington State Housing Finance Commission ("Commission") oversees and administers the Program. In order to qualify for assistance from the Program, prospective homebuyers must meet several eligibility requirements, including that the homebuyer or their parent/grandparent/great-grandparent identifies as Black, Hispanic, Native American, Alaska Native, Native Hawaiian or other Pacific Islander, Korean, or Asian Indian—marginalized groups that the Covenant Homeownership Program Study identified as having suffered significant past and continuing harms from housing discrimination by the State.

Plaintiff Foundation Against Intolerance and Racism, Inc. ("FAIR") is an organization that purportedly "fights for equality for all individuals regardless of whether they are members of underrepresented groups" by engaging in litigation "to ensure that diversity and inclusion efforts are non-discriminatory." Dkt. # 1 ¶¶ 2, 6. FAIR sued Defendant Steve Walker, in his official capacity as the Commission's Executive Director, "to vindicate its members' rights to equal protection." *Id*. ¶ 2. FAIR asserts a single claim under 42 U.S.C. § 1983 based on alleged violations of the Equal Protection Clause. *Id*. ¶¶ 20–36.

Executive Director Walker respectfully requests that the Court dismiss FAIR's Complaint under Rule 12(b)(1) and (6). As a preliminary matter, setting aside FAIR's inflammatory rhetoric and meritless allegations of discrimination, FAIR's Complaint fails at the very first jurisdictional hurdle—FAIR lacks standing to bring this equal protection challenge against Executive Director Walker. FAIR's Complaint is devoid of specific allegations establishing that at least one *identified member* has suffered or would suffer harm that would be redressed by a favorable decision of this Court, which is FAIR's burden under Article III. While FAIR vaguely alleges that one anonymous

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 2
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

member—Member A—is "interested" in participating in the Program but does not meet the Program's race requirements, FAIR does not adequately allege that Member A has in fact applied for and been rejected from the Program. Nor does FAIR adequately allege that Member A meets the Program's other eligibility requirements, including qualification for one of the Commission's first mortgage programs, proper calculation of her income, a history of past personal or family discrimination, and documentation of Washington residency prior to 1968.

Additionally, even if FAIR had standing (which it does not), FAIR's § 1983 claim fails as a matter of law. The Complaint does not plausibly allege Executive Director Walker's personal involvement in any violation of the Equal Protection Clause, which is fatal to FAIR's § 1983 claim. And, to the extent that FAIR is seeking nominal damages under § 1983, FAIR's nominal damages claim is barred by the Eleventh Amendment.

For these reasons, and as discussed further below, FAIR's Complaint should be dismissed.

## II.    FACTUAL BACKGROUND

This factual summary is based on the Complaint, documents it references, and judicially noticeable facts. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Evid. 201; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Executive Director Walker asks the Court to take judicial notice of the publicly available government records and data cited herein, including the Study and documents related to the Program's eligibility requirements, which are publicly available on the Commission's website. *See* Fed. R. Evid. 201; *Kater v. Churchill Downs Inc.,* 886 F.3d 784, 788 n.3 (9th Cir. 2018) (taking judicial notice of information "publicly available on the Washington government website"); *Kucuk v. Central Wash. Univ.*, No. C17-1262JLR, 2018 WL 1570922, at *2 n.3 (W.D. Wash. Mar. 30, 2018) (taking judicial notice of information available on public university's website on Rule 12(b)(6) motion to dismiss); *Hatley v. Mullan*, No. C21-820-JCC-

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 3
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

MLP, 2021 WL 5283685, at *1 n.2 (W.D. Wash. Oct. 27, 2021) (taking judicial notice of public records on Rule 12(b)(1) motion to dismiss). The Study and additional Program-related documents are attached to the Declaration of Paul J. Lawrence ("Lawrence Decl."), submitted contemporaneously herewith.

### A.    The Covenant Homeownership Act

In 2023, the Legislature passed the Covenant Homeownership Act to address the history of housing discrimination in Washington and its present-day impacts. *See* RCW 43.181.900(1)(e) ("The legislature finds that race-conscious programs, such as the special purpose credit programs authorized by RCW 43.181.040, are necessary to remedy the past discrimination in which the state was complicit and to remove the structural barriers that persist."). The Act was the product of extensive stakeholder and community engagement. Dkt. # 1-1 at 9. In September 2022, for example, the Housing Development Consortium of Seattle-King County convened more than 50 stakeholders across multiple sectors who worked together to examine barriers to homeownership, as well as policy options to address those barriers. *Id*. at 10. These comprehensive conversations resulted in suggestions for the legislation. *Id*. Ultimately, the Act was sponsored by 44 members of the House of Representatives and 14 members of the state Senate, and passed with bipartisan support, thanks in no small part to the advocacy and leadership of the Black Home Initiative, the Housing Development Consortium, Representative Jamila Taylor, Representative Frank Chopp, and Senator John Lovick. *See* HB 1474 H. B. Rep. at 10–14; Dkt. # 1-1 at 9. In adopting the Act, the State of Washington became one of the first states to face and address the role of government institutions in housing-related discrimination. Dkt. # 1-1 at 9.

As relevant here, the Act has two important features. First, the Act required the Commission to complete an evidence-based study—the Covenant Homeownership Program

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 4
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Study—to investigate the history of housing discrimination against marginalized communities in Washington, what role government institutions have had in the discrimination, the continuing impacts of that discrimination, and what specific assistance would be necessary to remedy these impacts. RCW 43.181.030. Second, the Act directed the Commission to establish a special purpose credit program based on the findings of the Study—the Covenant Homeownership Program—to provide downpayment and closing cost assistance to economically disadvantaged classes of people. RCW 43.181.040. The Study and the Program are discussed in relevant part below.

### 1. The Covenant Homeownership Study

As noted, the Study was the first step in the development of the Covenant Homeownership Program. In 2023, the Commission selected the National Fair Housing Alliance and its research partners to complete the Study. Dkt. # 1-1 at 7–8. As required under the Act, the National Fair Housing Alliance investigated and documented historical discrimination in housing and its impacts on current homeownership rates in Washington, analyzed the effectiveness of existing race-neutral programs and policies in addressing these impacts, and recommended an approach to remedy these impacts. *Id*. The National Fair Housing Alliance's work culminated in the Study, which was publicly released in March 2024. *Id*. at 7. The Study's key findings are summarized below.

### a. *Historical housing discrimination in Washington.*

The Study documented and analyzed the ways in which discriminatory State and local government policies and practices systematically denied communities of color and other marginalized groups in Washington equal access to housing and credit opportunities for over a century, including the following:

- Washington residents of color and other marginalized groups faced widespread discriminatory barriers to equal housing opportunities from the 19th century onward, implemented through State and local governmental policies and practices. *See*

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 5
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Lawrence Decl., Ex. A at 5.

- These discriminatory actions included land seizures, forced removal, over 50,000 racially restrictive covenants barring people of color and other marginalized groups from purchasing homes and living in specific neighborhoods, exclusionary zoning practices, and racist practices in the State-licensed real estate industry. State courts reinforced many of these practices. *Id.*

- As a direct result, people of color and other marginalized groups in Washington were prevented from buying homes, accessing credit, and building wealth. These groups experienced widespread segregation and confinement to areas deemed least desirable by public officials and private actors. Residential segregation patterns established at this time persist to varying degrees today. *Id.*

### b.  *Continuing impacts of housing discrimination.*

Next, the Study documented the ongoing, persistent impacts of this unlawful discrimination in the housing market on historically marginalized communities in Washington, including on homeownership, wealth, housing cost burden, homelessness, access to mortgage lending, and appraisal disparities. Among other things, the Study found that:

- In Washington today, there are significant disparities between the White homeownership rate and the homeownership rates of Blacks, Latinos, Native Americans, Alaska Natives, Native Hawaiians and other Pacific Islanders, and two Asian subgroups (Koreans and Asian Indians). *Id.*

- Because the racial homeownership rates are significantly lower for Blacks, Latinos, Native Americans, Alaska Natives, Native Hawaiians and other Pacific Islanders, and two Asian subgroups (Koreans and Asian Indians), for the purposes of the Study, renters from these racial and ethnic groups are considered "impacted residents" who should be assisted by the Covenant Homeownership Program. *Id.* at 6.

- Racial wealth disparities have grown, limiting the ability of impacted households to access affordable home mortgages or qualify for lending. In Washington, White households have a net worth of $286,200 per household, while households of color have an estimated net worth one-quarter of that, or $67,600. *Id.*

- The lack of access to credit and unfair treatment in the appraisal and lending processes continues to disadvantage impacted residents. For example, Blacks and Latinos in Washington are denied mortgage loans at a rate of 11.9 and 12 percent, respectively, compared to a 6.6 percent denial rate for Whites and 7.9 percent for Asians. *Id.*

### c.  *Different policy approaches for expanding ownership opportunities.*

The Study then evaluated policy approaches, including a range of race-neutral approaches,

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

for expanding homeownership opportunities to impacted residents. The Study concluded that a race-neutral approach was unlikely to be effective in addressing past discrimination and ongoing disparities for multiple reasons, including the following:

- Existing race-neutral homeownership programs in Washington primarily aid non-impacted residents rather than directly remedying past harm through a targeted approach. *Id*. at 7.

- Modeling of five potential policy scenarios—(1) a no assistance scenario, (2) a baseline scenario that assumes $10,000 in downpayment assistance is available from existing sources, (3) a downpayment assistance scenario that adds $50,000 for income-eligible first-time buyers in low-cost counties and $120,000 in high-cost counties, (4) an interest-rate reduction scenario, and (5) a credit-counseling scenario—shows that additional downpayment assistance is the most effective scenario to aid impacted residents. *Id*.

- Modeling also shows that a specially designed race-conscious special purpose credit union focused on impacted residents could substantially remedy the wealth and credit access gaps left by the State's historical discrimination with significantly less funding than a race-neutral program. *Id*. With the $75-$100 million per year in anticipated fee revenue under the Covenant Homeownership Act, a race-conscious approach to downpayment assistance would reach four times the number of Black, Latino, Native American, Alaska Natives, Native Hawaiian and other Pacific Islanders, Korean, and Asian Indian beneficiaries than a race-neutral approach. With an estimated $6 billion cost to reach all impacted residents through a race-neutral approach, it would take decades to serve them all based on the expected annual fee revenue for the program. *Id*.

   **d.   *Recommendations for a race-conscious special purpose credit program.***

Based on these findings, the Study recommended implementing a race-conscious special purpose credit program to remedy the ongoing harms of historical discrimination by the State. *Id*. The Study's recommendations for a new special purpose credit program, consistent with the restrictions in the Act, included the following:

- Implement the special purpose credit program as outlined in RCW 43.181.040 for economically disadvantaged households with Black, Latino, Native American, Alaska Native, Native Hawaiian, Other Pacific Islander, Korean, or Asian Indian homebuyers. *Id*. at 8.

- Provide customized amounts of downpayment assistance that enable households with incomes between 80-100% of the Area Median Income ("AMI") to afford a modest-

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 7
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

cost home in their county. *Id*.

- Provide downpayment assistance as a zero-interest loan. *Id*.

The Study also recommended program targets—such as the volume of applications and change in the homeownership rate for impacted residents over time—that could be used to monitor the Program and determine if there is an ongoing need for it. *Id*. at 9.

Pursuant to the Act, the Study's findings and recommendations established the framework for the creation of the Commission's Covenant Homeownership Program and helped determine who would be eligible for the Program's assistance. Dkt. # 1-1 at 9.

## 2. The Covenant Homeownership Program

After the Study was released, the Commission established the Covenant Homeownership Program to provide downpayment and closing cost assistance to economically disadvantaged classes of people identified in the Study.[3] RCW 43.181.040(2). The Program provides downpayment and closing cost assistance for first-time homebuyers in the form of a zero-interest secondary mortgage loan, which *must* be used in conjunction with a first mortgage secured through one of the loan programs offered by the Commission to homebuyers of all races. Dkt. # 1 ¶ 11; Lawrence Decl., Ex. B at 1; RCW 43.181.040(3)(c).[4] Each of the Commission's first mortgage loan programs has its own requirements, including income limits and acquisition cost limits, and is available only through participating lenders. *See, e.g.*, Lawrence Decl., Ex. C; *id*., Ex. D. However, for all of the Commission's first mortgage loan programs, a homebuyer must qualify for an FHA, HUD 184, VA, USDA, Fannie Mae, or Freddie Mac loan using all regular underwriting

---

[3] The Program is funded through an account in the state treasury ("Covenant Homeownership Account"), funded by a $100 document recording assessment on real estate transactions. Dkt. # 1-1 at 9; RCW 43.181.020.

[4] The Commission offers various other programs and assistance to homebuyers of all races. *See, e.g.*, Wash. State Hous. Fin. Comm'n, *Downpayment Assistance*, https://www.wshfc.org/buyers/downpayment.htm (last visited December 9, 2024).

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 8
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

guidelines for credit, debt to income ratios, and income. *See id*., Ex. B at 1–2.

Based on the mandates of the Act and the recommendations of the Study, homebuyers must meet the following eligibility criteria in order to qualify for assistance under the Program:

- As with all Commission home loans, the homebuyer "must meet lender underwriting requirements, i.e., qualify for a home loan from a [participating] lending institution." Dkt. # 1-1 at 5. Additionally, the homebuyer must qualify for one of the Commission's first mortgage programs. Lawrence Decl., Ex. B at 1.

- The homebuyer's household income must be at or below 100% of AMI, which is set by county. Dkt. # 1-1 at 3. The Program uses "Credit Underwriting Income" for this income calculation, which means that income is calculated according to the lender's underwriting guidelines. *Id*., Ex. B at 3; *id*., Ex. E at 3. Income limits for the homebuyer's first mortgage may be different, and "[f]urther restrictions apply if using the House Key program" for the first mortgage. *Id*., Ex. E at 3; *id*., Ex. B at 1. The homebuyer must meet both the first and second mortgage income limit guidelines. *Id*., Ex. B  at 1.

- The homebuyer must be a "first-time homebuyer," which is defined as someone who (1) has not owned a home within the past three years, (2) is a single parent who has only owned a home while married to a former spouse, (3) is a displaced homemaker and has only owned a home with a spouse, (4) has only owned a residence that had no permanent foundation (such as a manufactured home), or (5) has only owned a property that was determined to be uninhabitable. Dkt. # 1-1 at 5; RCW 43.181.010(4).

- The homebuyer or a parent/grandparent/great-grandparent of the homebuyer must have lived in Washington before April 11, 1968, when the Fair Housing Act was passed. Dkt. # 1-1 at 3. The homebuyer must provide documentation confirming residency in Washington prior to April 11, 1968. Lawrence Decl., Ex. E at 5–6.

- The person who lived in Washington before April 11, 1968 must be in one of the following categories identified in the Study: Black, Hispanic, Native American/Alaska Native, Native Hawaiian or other Pacific Islander, Korean, or Asian Indian. *Id*. The homebuyer must provide documentation. *Id*.

During this initial phase of the Program, the Program's eligibility criteria are intentionally narrowly tailored to specific racial and ethnic groups. Dkt. # 1-1 at 4. While many racial, ethnic, and religious groups in Washington were subject to unjust housing discrimination, the Program considers not only this history, but also the lasting impacts of housing discrimination on specific racial and ethnic groups, as documented in the Study. *Id*.

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 9
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### B.    FAIR's Lawsuit

FAIR filed this lawsuit against Executive Director Walker on October 29, 2024. Dkt. # 1. FAIR alleges that it "has members who are ready, willing, and able to purchase a home in the State of Washington," but are ineligible for the Program "[b]ecause the Program bases eligibility on race." *Id*. ¶ 2. FAIR identifies only one anonymous member—Member A—who allegedly "resides and is interested in buying a home" in Washington, and would otherwise meet "the first-time homebuyer criteria required by the Program" but for her race. *Id*. ¶ 7 (alleging Member A "is a first-time homebuyer; her household income is at or below the median income of the county where she resides and is interested in buying a home; and she and her parents lived in Washington before April 1968"). FAIR alleges that Member A is "ready, willing, and able to apply to be considered for a loan provided under the Program." *Id*. FAIR does *not* allege, however, that Member A has qualified for one of the Commission's first mortgage programs, has calculated her income using Credit Underwriting Income only (i.e., her income was calculated according to her lender's underwriting guidelines), has documentation showing her or her parents' residency in Washington prior to April 11, 1968, or has a personal or family history of housing discrimination. Nor does FAIR allege that Member A has in fact applied for and been denied assistance from the Program.

FAIR asserts a single claim under 42 U.S.C. § 1983 against Executive Director Walker alleging violations of the Equal Protection Clause. *Id*. ¶¶ 20–36. FAIR seeks, among other things, declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, a permanent injunction against Executive Director Walker prohibiting enforcement of the "challenged discriminatory aspects" of the Program and requiring Executive Director Walker to "implement eligibility criteria and provide housing benefits without regard to the race of applicants," and an award of nominal damages. *Id*. at 7, ¶¶ 1–5. For the reasons set forth below, Executive Director

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  Walker respectfully requests that the Court dismiss FAIR's Complaint.

2  ### III.    AUTHORITY & ARGUMENT

3  #### A.    Legal Standard Governing Rule 12(b) Motions

4  Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the

5  plaintiff fails to demonstrate standing.[5] *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

6  1121-23 (9th Cir. 2010). "Standing is a threshold matter central to [the Court's] subject matter

7  jurisdiction," *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), and it is the

8  plaintiff's burden "clearly to allege facts demonstrating that [it] is a proper party to invoke judicial

9  resolution of the dispute." *United States v. Hays*, 515 U.S. 737, 743 (1995) (cleaned up).

10
11  A complaint must also be dismissed under Rule 12(b)(6) if it "lacks a cognizable legal

12  theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*,

13  710 F.3d 995, 999 (9th Cir. 2013). Factual allegations must "raise a right to relief above the

14  speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory

15  allegations of law and unwarranted inferences" are not enough. *Cousins v. Lockyer*, 568 F.3d 1063,

16  1067-68 (9th Cir. 2009) (cleaned up); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th

17  Cir. 2014) (mere "labels and conclusions, . . . a formulaic recitation of the elements of a cause of

18  action[,] or naked assertion[s] devoid of further factual enhancement will not suffice") (cleaned

19  up).

20
21
22
23
24
---

[5] A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, FAIR's lack of standing is evident from its own allegations, and also from the evidence presented. This Court need not base its ruling solely on the allegations of the Complaint (even though those allegations are sufficient to dismiss), and may consider the documents submitted by Executive Director Walker because unlike a Rule 12(b)(6) challenge, a court need not presume the truthfulness of the plaintiff's allegations for purposes of a Rule 12(b)(1) factual challenge. *Id.*

25
26
27

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Dismissal is also appropriate under either 12(b)(1) or (6) if a defendant is immune from suit. *Sato v. Orange Cnty. Dep't of Ed.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017); *Proctor v. United States*, 781 F.2d 752, 753 (9th Cir. 1986).

### B.    FAIR Lacks Standing

As a preliminary matter, this case should be dismissed for want of jurisdiction because FAIR has failed to show Article III standing. Article III of the Constitution limits the exercise of judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). For a case to satisfy a federal court's case-or-controversy requirement, Article III, Section 2 requires an "irreducible" minimum of standing. *Lujan*, 504 U.S. at 560. Article III standing is a threshold jurisdictional requirement that cannot be waived and can be raised at any time during a suit. *See* Fed. R. Civ. P. 12(h)(1), (3); *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). And, as the Supreme Court recently reminded litigants, federal courts cannot preside over general complaints regarding how government entities conduct business without the litigant having a concrete and particularized injury. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379, 381 (2024) ("[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally.").

Organizations can assert standing on behalf of their members ("associational standing"), or in their own right. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021). Here, FAIR asserts standing on behalf of its "members." Dkt. # 1 at 2–3. To satisfy the requirements of associational standing, FAIR must establish that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests at stake are germane to the organization's purpose," and; (3) "neither the claim asserted nor the relief requested requires the participation of

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 12
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *see also Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) ("*AGC*").

FAIR has not met its burden because it fails to adequately allege that any of its unnamed members would have standing to bring suit on their own. For this reason alone, the Court should dismiss FAIR's Complaint.

### 1. Member A lacks standing to sue in her own right.

As to the first requirement of associational standing, FAIR must establish that "(1) at least one of its members has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024). When "a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Loffman v. California Dep't of Educ.*, 119 F.4th 1147, 1159 (9th Cir. 2024) (cleaned up). "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381.

Where, as here, an equal protection violation is alleged, a plaintiff can show standing "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group." *Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). In this context, the alleged injury-in-fact is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* As a result, a plaintiff must show

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 13
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

that she "is likely to apply . . . in the reasonably foreseeable future" if the government were not unconstitutionally barring her from the fruits of the application process. *Carney v. Adams*, 592 U.S. 53, 60 (2020). A plaintiff "can show this only if [she] is 'able and ready' to apply." *Id*.

While "[t]he Supreme Court has articulated a broad conception of Article III standing to bring equal protection challenges," it "is not without limits." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012). As the Ninth Circuit explained in *Braunstein*, "[t]he rule that a plaintiff must assert a particularized injury, rather than a generalized grievance, applies with as much force in the equal protection context as in any other." 683 F.3d at 1185 (cleaned up). Accordingly, "[e]ven if the government has discriminated on the basis of race, only those who are 'personally denied' equal treatment have a cognizable injury under Article III." *Id*. (citing *Allen v. Wright*, 468 U.S. 737, 755 (1984) and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 489 n. 26 (1982) (rejecting the notion that every citizen has standing to challenge an affirmative action program)); *see also Carroll v. Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003) (plaintiff lacked standing to challenge racial preferences in government loan program where plaintiff filed only a "symbolic, incomplete application" and did not demonstrate an "ability to compete" for the loan); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972) (plaintiff lacked standing to challenge an organization's racially discriminatory membership policy where he never sought to become a member).

Moreover, "[t]o seek injunctive relief, a plaintiff must show that [she] is under threat of suffering 'injury in fact' that is concrete and particularized [and] the threat must be actual and imminent, not conjectural or hypothetical[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (cleaned up). Significantly, no Article III standing exists if a plaintiff's theory of injury rests on an "attenuated chain of inferences necessary to find harm." *Clapper v. Amnesty Int'l USA*,

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

568 U.S. 398, 414 n.5 (2013). Rather, the plaintiff "bear[s] the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm," and may not "rely on speculation about 'the unfettered choices made by independent actors not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 562).

### a. *Member A has not suffered a concrete and particularized injury.*

FAIR's Complaint is devoid of "specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *AGC*, 713 F.3d at 1194 (cleaned up). Instead, FAIR vaguely alleges in conclusory fashion that anonymous Member A "*wishes*" or is "*interested*" in buying a home in Washington and, but for her race, she "meets the first-time homebuyer criteria required by the Program." Dkt. # 1 ¶ 7. FAIR suggests that Member A has been injured because she is "ready, willing, and able to apply" to the Program, but has been deterred from applying by what she perceives to be an insurmountable racial test. *Id.* Yet "[a]n injury in fact must be 'concrete,' meaning that it must be real and not abstract." *All. for Hippocratic Med.*, 602 U.S. at 381. A deterred applicant has standing only if they were both "able and ready" to apply for the benefit if the alleged selection criteria were different. *Northeastern Florida*, 508 U.S. at 666. For the reasons discussed below, the general allegations in the Complaint are not sufficient to establish standing.

***First***, Member A's alleged "*interest*" in purchasing a home in Washington is insufficient to establish standing to bring an equal protection challenge. In order to establish standing, FAIR must allege facts demonstrating that Member A is "ready" to purchase a home in Washington. *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 110, 1108–09 (9th Cir. 2020) (applying the "able and ready" standard at the pleading stage). While intent may be relevant to standing in an equal protection challenge, *Gratz v.*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Bollinger*, 539 U.S. 244, 261–62 (2003), Member A's mere "interest" in purchasing a home is not sufficient to establish that she intends to and is "ready" to make that purchase. Dkt. # 1 ¶ 7; *see Carney*, 592 U.S. at 63–66 (plaintiff lacked standing to challenge discriminatory judgeship program where "[his] words 'I would apply . . . ' stand alone without any actual past injury, without reference to any anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence."); *Nakatoni*, 342 F.3d at 941–43 (plaintiff lacked standing to challenge discriminatory business loan program where he submitted an incomplete business loan application, failed to respond to the agency's request for additional information, did not seek alternative sources of financing as required by the program, failed to formulate a basic business plan, had no work history for the past 25 years, and did not research necessary business expenses); *Loffman*, 119 F.4th at 1161–62 (sectarian school plaintiffs lacked standing to bring equal protection challenge to California's statutory requirement that nonpublic schools (NPS) be nonsectarian where plaintiffs failed to allege they "in fact intend[] to apply to serve" as an NPS).

Thus, even accepting as true FAIR's allegation that Member A is *interested* in purchasing a home, that allegation is insufficient to establish an "actual or imminent" injury to Member A. *See, e.g.*, *Bruckner v. Biden*, 666 F. Supp. 3d 1237, 1245–46 (M.D. Fla. 2023) (dismissing plaintiffs' equal protection claim under Rule 12(b)(1) where they failed to "provid[e] any detail about their prior experience with Infrastructure Act-funded contracts or preparations to apply for such contracts in the future," and therefore their "assertions that they were ready to bid on contracts governed by the DBE program [were] conclusory"); *see also N. Carolina All. for Retired Americans v. Hirsch*, --- F. Supp. 3d ----, No. 5:24-CV-275-D, 2024 WL 3507677, at *4 (E.D.N.C.

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 16
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

July 19, 2024) (plaintiff lacked associational standing where standing argument was "entirely speculative"); *Citizens for Fair Representation v. Padilla*, 815 F. App'x 120, 124 (9th Cir. 2020) (affirming dismissal of equal protection claim under Rule 12(b) where alleged injury was "too abstract and indefinite to establish standing.") (cleaned up). Member A's conclusory assertion of intent "has not sufficiently differentiated [her]self from a general population of individuals affected in the abstract by the legal provision [s]he attacks." *Carney*, 592 U.S. at 64.

   ***Second***, FAIR has not adequately alleged that Member A is actually "able" to participate in the Program. Among other things, the Program requires homebuyers to qualify for a first mortgage loan through one of the Commission's programs, and "[a]s with all Commission home loans, homebuyers must meet lender underwriting requirements, i.e. qualify for a home loan from a lending institution." Dkt. # 1-1 at 4; Lawrence Decl., Ex. B at 1; RCW 43.181.040(3)(c). Additionally, the Program is limited to homebuyers at or below 100% of AMI in the county where they are buying a home, with the homebuyer's income calculated according to their lender's underwriting guidelines (also known as Credit Underwriting Income). Lawrence Decl., Ex. B at 3. And regarding the Program's residency requirements, homebuyers must provide documentation confirming that they were either "a Washington state resident on or before the enactment of the federal fair housing act . . . on April 11, 1968" or "a descendant of a person who meets the criteria." RCW 43.181.040(4)(c)(i)–(ii) ("Records that show a person's address on or about a specific date or include a reference indicated that a person is a resident of a specific city or area on or about a specific date may be used to provide proof that a person satisfies the [residency criteria], such as genealogical records, vital records, church records, military records, probate records, public records, census data, newspaper clippings, and other similar documents."). Finally, the Program is distinct from other available first time homebuyer's programs in that it offers additional support

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 17
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to address past discrimination. Member "A" has not asserted any personal or family history of discrimination.

While FAIR vaguely alleges that Member A meets the "first-time homebuyer criteria required by the Program," nothing in FAIR's Complaint indicates that Member A is eligible for or has secured a first mortgage loan through the Commission, has calculated her income using Credit Underwriting Income only, or has documentation showing residency in Washington prior to April 11, 1968. Dkt. # 1 ¶ 7. Tellingly, the Complaint does not allege that Member A has in fact applied for and been denied assistance from the Program. Accordingly, because it does not appear from the Complaint that Member A actually meets the Program's eligibility requirements, FAIR has not adequately alleged that Member A is "able" to participate in the Program. *Bruckner*, 666 F. Supp. 3d at 1245 (plaintiffs lacked standing to challenge discriminatory program where complaint contained no allegations regarding their ability to bid on contracts under program, including their "expertise," "prior experience," or "practical capabilities as a company"); *Loffman*, 119 F.4th at 1161–62 (affirming Rule 12(b)(6) dismissal of school plaintiffs' equal protection challenge to California's statutory requirement that NPSs be nonsectarian where plaintiffs failed to "allege that they would be able and ready to satisfy the requirements to become NPSs, even if California permitted sectarian schools to apply."). For this additional reason, Member A has not suffered a concrete and particularized injury in fact that is sufficient to establish Article III standing.

***Third***, by failing to identify Member A by name, FAIR has not adequately alleged that it has at least one member with Article III standing. To establish associational standing, an organization generally does not need to identify the injured member to establish standing if "it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by the defendant's action" and the defendant does not need to know "the identity

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

of a particular member to understand and respond to an organization's claim of injury." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *overruled on other grounds*, *Ariz. All. For Retired Ams. v. Mayes*, 117 F.4th 1165 (9th Cir. 2024). Here, however—for the reasons discussed above—it is *not* clear from FAIR's Complaint that Member A has been or will be adversely affected by the Program. Further, in light of the financial and personal eligibility criteria required to participate in the Program, including the homebuyer's income and ability to secure a first mortgage, the identity of "some of FAIR's members" who FAIR alleges are "ineligible for the program based purely on their race" is necessary to evaluate FAIR's claimed injury. Dkt. # 1 ¶ 2. For this additional reason, FAIR has failed to establish Article III standing.

***

In sum, FAIR's Complaint contains insufficient, conclusory allegations of injury to Member A, which is not redressable by Executive Director Walker. Dismissal under Rule 12(b)(1) is proper.[6]

### C.    FAIR's § 1983 Claim Must Be Dismissed

Even if FAIR had standing to bring its claims (which it does not), FAIR's § 1983 claim fails as a matter of law. As a threshold matter, § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Specifically, § 1983 "provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured

---

[6] In the event that the Court questions whether dismissal is appropriate under 12(b)(1), Executive Director Walker requests leave to take very limited jurisdictional discovery to confirm that Member A lacks standing. In general, "[w]here issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *Woodard v. Quote Storm Holdings*, LLC, No. 23 C 55, 2023 WL 3627719, at *3 (N.D. Ill. May 24, 2023) ("Where the evidence offered by the parties is inconclusive as to subject-matter jurisdiction, a district court can permit limited jurisdictional discovery.").

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). As a predicate to § 1983 liability, a defendant must be a "person" acting "under color of [law]," 42 U.S.C. § 1983, and must also "integrally participate in the unlawful [conduct]," *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020). Thus, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, FAIR's Complaint fails to state a § 1983 claim against Executive Director Walker because it does not plausibly allege his personal involvement in any constitutional violation. Additionally, to the extent that FAIR is seeking nominal damages under § 1983, FAIR's nominal damages claim is barred by the Eleventh Amendment. For these additional reasons, FAIR's Complaint should be dismissed.

1.    **FAIR fails to state a § 1983 claim against Executive Director Walker.**

FAIR fails to plausibly allege facts supporting § 1983 claims against Executive Director Walker. Dkt. # 1 ¶¶ 20–36. As noted, a § 1983 plaintiff must allege both that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). The complaint must set forth the "specific injury-causing act or omission of" a particular defendant. *Holt v. McDonnell*, No. CV 15-9632 R(JC), 2016 WL 7217572, at *4 (C.D. Cal. Dec. 12, 2016); *see also Brown v. Morgan*, No. C16-5975 RBL-TLF, 2017 WL 3454572, at *2 (W.D. Wash. Aug. 11, 2017) ("A plaintiff must allege that he suffered a specific injury as a result of the conduct of a

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 20
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant."). "Vague and conclusory allegations of official participation in a civil rights violation are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

FAIR's Complaint contains no specific factual allegations relating to Executive Director Walker. Dkt. # 1 ¶¶ 20–36. Instead, FAIR focuses primarily on the constitutionality of the Program and its purported "discriminat[ion] on the basis of race in violation of the Equal Protection Clause," and vaguely argues that Executive Director Walker "oversees the Commission and its programs, including the Covenant Homeownership Program." *Id.* ¶¶ 8, 25. Moreover, the limited conduct that FAIR attempts to attribute to Executive Director Walker is nothing more than "[a] formulaic recitation of the elements of a cause of action," which is not sufficient to survive dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; Dkt. # 1 ¶¶ 29–33 (alleging Executive Director Walker "has not specifically identified any racial discrimination to be remedied by the Program," "lacks a strong basis in evidence to conclude that remedial action is necessary regarding any racial discrimination in the State," and "cannot prove that the racial exclusivity mandated by the Program is narrowly tailored towards achieving that interest"). Tellingly, FAIR's allegations stand in direct conflict with the plain language of the Covenant Homeownership Act and the findings and recommendations set forth in the Study. *Compare supra* § II.A *with* Dkt. # 1 ¶¶ 29–33.

In short, FAIR fails to single out any acts Executive Director Walker personally took in violation of the Equal Protection Clause. The Complaint thus fails to state a § 1983 claim against Executive Director Walker.

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 21
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

    **2.**  **Executive Director Walker is immune from liability for FAIR's claim for nominal damages under § 1983.**

3

  Even if the Complaint included allegations against Executive Director Walker sufficient to

4

state a claim (it does not), Executive Director Walker remains immune from liability for FAIR's

5

claim for nominal damages under § 1983. The Eleventh Amendment bars suits against a state and

6

its agencies and confers immunity from any prosecution of such suits. *Block v. Wash. State Bar*

7

*Ass'n*, No. C15-2018RSM, 2016 WL 1464467, at *8 (W.D. Wash. Apr. 13, 2016) (citing *Lake*

8

*Cnty. Est., Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400-01 (1979)). This immunity

9

extends to claims for *damages* against individual defendants acting in their official capacities,

10

including Executive Director Walker who is named in his "official capacity" in FAIR's Complaint.

11

*See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992); Dkt. # 1 ¶ 8.

12

  While Congress may abrogate a state's Eleventh Amendment immunity, *Dittman v.*

13

*California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999), "[m]ore than 30 years ago, in *Quern v. Jordan*,

14

440 U.S. 332, 342–45, 99 S. Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that § 1983

15

does not abrogate state sovereign immunity." *Braunstein*, 683 F.3d at 1188–89. Thus, it is now

16

well-settled "that sovereign immunity precludes [§ 1983] damages claims against state entities and

17

state actors in their official capacity." *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*,

18

465 U.S. 89, 100–102 (1984) (sovereign immunity extends to state agencies and to damage claims

19

against state officials acting in their official capacity); *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th

20

Cir. 1982) ("There is no doubt that suit under either §§ 1981 or 1983 against [a state agency is]

21

barred by the Eleventh Amendment."). Accordingly, the Eleventh Amendment protects Executive

22

Director Walker from liability in damages.

23

24

25

26

27

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 22
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The fact that FAIR is seeking only nominal damages under § 1983 makes no difference. Under Ninth Circuit precedent, Eleventh Amendment immunity prohibits *all* damages claims—including claims for nominal damages—brought against state officials acting in their official capacity under § 1983. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021 n.4 (9th Cir. 2010) (noting that the government defendant "would [have] be[en] entitled" to Eleventh Amendment "immunity from the plaintiffs' claims seeking nominal damages" if it had not waived that defense); *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (Eleventh Amendment bars federal-court suits for money damages against States, state agencies, and state officials acting in their official capacities); *Connolly v. Roche*, No. 2:14-CV-00024 JWS, 2014 WL 12550553, at *3 (D. Ariz. July 30, 2014) (rejecting plaintiff's theory "that nominal damages should be treated differently than compensatory damages for purpose of the Eleventh Amendment" and dismissing plaintiff's claim for nominal damages); *Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021) ("[A]bsent waiver by the State or valid congressional override, state sovereign immunity protects state officer defendants sued in federal court in their official capacities from liability in damages, including nominal damages.") (cleaned up). FAIR's nominal damages claim against Executive Director Walker must be dismissed under the Eleventh Amendment.

## IV.     CONCLUSION

For the reasons above, Executive Director Walker respectfully requests that the Court dismiss FAIR's Complaint.

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1          I certify that this memorandum contains 7,569 words, in compliance with the Local Civil

2   Rules.

3

4          DATED this 20th day of December, 2024.

5

6                               PACIFICA LAW GROUP LLP

7

8                             *s/ Paul J. Lawrence*
                          Paul J. Lawrence, WSBA #13557

9                             Jamie L. Lisagor, WSBA #39946
                          Ai-Li Chiong-Martinson, WSBA #53359

10                            Erica Coray, WSBA #61987

11                            Attorneys for Defendant Steve Walker

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – 24
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750