Hon. John H. Chun

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | | |
|---|---|---|
| FOUNDATION AGAINST INTOLERANCE AND RACISM, INC., | ) ) | Civil Action No. 2:24-cv-01770-JHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S RESPONSE IN** |
| v. | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| STEVE WALKER, in his official | ) | |
| capacity as Executive Director of the | ) | **Re-Noted on motion calendar** |
| Washington State Housing Finance | ) | **February 7, 2025** |
| Commission, | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ............................................................................................................ 6

   I.    FAIR Has Standing ......................................................................................... 6

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

A.    Member A Has Standing to Seek Prospective Relief from the Government's Race-Based Unequal Treatment ....................................................................... 7

    1.    Member A Is Able and Ready to Apply for the Covenant Homeownership Program ........................................................................ 8

    2.    Member A Is Adversely Affected by Defendant's Racial Barrier ............ 13

II.   FAIR States a § 1983 Claim Against Executive Director Walker, in His Official Capacity ............................................................................................. 15

III.  The Court Should Grant Leave to Amend ....................................................... 17

CONCLUSION ....................................................................................................... 17

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1st Tech. LLC v. Bodog Ent. Grp. S.A.*,
  No. C08-0872-JCC, 2009 WL 10855711 (W.D. Wash. Feb. 6, 2009) ...................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 6

*Babbitt v. United Farm Workers Nat. Union*,
  442 U.S. 289 (1979) ........................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 6

*Benavidez v. Cnty. of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) ...................................................................... 16

*Bird v. Lewis & Clark Coll.*,
  303 F.3d 1015 (9th Cir. 2002) ........................................................................ 7

*Bras v. California Pub. Utilities Comm'n*,
  59 F.3d 869 (9th Cir. 1995) ..................................................................... 8, 11

*Braunstein v. Arizona Dep't of Transp.*,
  683 F.3d 1177 (9th Cir. 2012) ...................................................................... 13

*Carney v. Adams*,
  592 U.S. 53 (2020) ................................................................................. 10, 11

*Carroll v. Nakatani*,
  342 F.3d 934 (9th Cir. 2003) .................................................................. 12, 13

*CAT Scale Co. v. Conico Toro, Inc.*,
  No. 2:24-CV-03396-WLH-JC, 2024 WL 4875387
  (C.D. Cal. Nov. 12, 2024) .............................................................................. 4

*Colwell v. Bannister*,
  763 F.3d 1060 (9th Cir. 2014) ...................................................................... 16

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...................................................................... 17

*Env't Prot. Info. Ctr. v. Pac. Lumber Co.*,
  469 F. Supp. 2d 803 (N.D. Cal. 2007) .......................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................................ 7

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ...................................................................................... 10

*Hartmann v. California Dep't of Corr. & Rehab.*,
  707 F.3d 1114 (9th Cir. 2013) ................................................................. 16

*International Union, United Auto. Workers v. Brock*,
  477 U.S. 274 (1986) ................................................................................. 15

*Johnson v. Mitchell*,
  No. CIV S-10-1968 GEB, 2012 WL 1657643
  (E.D. Cal. May 10, 2012) ........................................................................ 15

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ................................................................................. 16

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................. 15

*Loffman v. California Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) ............................................................... 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................. 6, 7

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ..................................................................... 6

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ................................................................................... 9

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ................................................................. 17

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ................................................................. 13

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
  Jacksonville*, 508 U.S. 656 (1993) .......................................... 7, 8, 10, 14

*Oregon Advoc. Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ................................................................... 7

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ................................................................... 17

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ................................................................................. 10

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of
  Health & Hum. Servs.*,
  946 F.3d 1100 (9th Cir. 2020) ................................................................. 11

*Pouncil v. Tilton*,
  704 F.3d 568 (9th Cir. 2012) ................................................................... 16

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

*Rock the Vote v. Trump*,
   No. 20-CV-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020) .................. 5

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
   Coll.*, 600 U.S. 181 (2023) ........................................................................................ 9

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ................................................................................................. 10

*Turner v. Fouche*,
   396 U.S. 346 (1970) ............................................................................................. 8, 10

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ................................................................................................... 7

*Unsworth v. Musk*,
   No. 19-mc-80224-JSC, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) .................... 5

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................. 15

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ................................................................................................... 16

*Ex parte Young*,
   209 U.S. 123 (1908) ................................................................................................... 2

**Statutes**

42 U.S.C. § 1983 .................................................................................................... 2, 15

Wash. Sess. Laws, ch. 340 (2023),
   https://legiscan.com/WA/text/HB1474/id/2809775 ............................................. 4, 9

**Rules of Court**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 6

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 6

**Other Authorities**

Groover, Heidi, *Wash. Program to Help First-Time Homebuyers with
   History of Discrimination*, Seattle Times, Jan. 15, 2025 ......................................... 5

P. Oppo. to D. Mot to Dismiss - v
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

# INTRODUCTION

The Foundation Against Intolerance and Racism (FAIR) is a membership organization that advocates for equal treatment, regardless of race. One of FAIR's members, Member "A," is denied equal treatment by the State of Washington where she lives. FAIR is standing up for Member A because the State of Washington denies individuals like her the opportunity to apply for the state's Covenant Homeownership Program. The sole reason is because Member A is not the state's preferred race. The state explicitly limits eligibility to apply for the program to individuals from specific racial and ethnic groups. Member A does not identify as any of the races or ethnicities that the state allows to apply for the program. Member A simply seeks the opportunity to apply to the program on an equal basis. Member A, through FAIR, challenges this discriminatory, race-based treatment by the state.

Defendant Steve Walker, Executive Director of the Washington State Housing Finance Commission (Commission) that implements the Covenant Homeownership Program (Program), contends that FAIR cannot challenge the program for two primary reasons. First, the Commission argues that FAIR lacks Article III standing. Second, the Commission argues that Director Walker is not subject to suit for his role in administering the Program. The Commission is wrong on both counts.

As to FAIR's standing to bring this suit, the Commission simply gets the injury wrong in equal protection suits. It argues that the program poses no injury to Member A because she has not proven in FAIR's complaint that she satisfies the non-racial criteria that would allow her to actually obtain a loan from the Program. But Member A's injury is the denial of equal treatment resulting from the state's racial barrier to applying for a Program loan, and not whether she ultimately obtains the loan. Since the Commission has erected a racial barrier that prohibits Member A from applying to the Program altogether, she only needs to demonstrate

that she is able and ready to apply to the Program and that the discriminatory eligibility criteria prevents her from applying on an equal basis. Member A sufficiently demonstrates this through her prior efforts to obtain assistance to purchase a home and a history of utilizing assistance from the state.

After all, Member A is plainly ready and able to meet all of the criteria to apply for the Program should the racial barrier be removed. She is a first-time homebuyer under the Program's definition; her household income is below 100 percent of the median income where she would like to purchase a home; and she and her parents lived in Washington before April 1968. The state, on the other hand, would require Member A to first take out a partial loan for a home she could not afford, and then apply for the Covenant Homeownership Program, a program she is categorically ineligible for. Such futile and personally ruinous actions are in no way necessary to demonstrate readiness for the Program. The Commission has erected a racial barrier that prevents her from entering the Program; she isn't required to go into significant financial risk to challenge it.

The Commission is also wrong about Defendant Walker's ability to be sued for administering the Program. It argues that FAIR has not shown how Director Walker personally injured Member A to state a claim under 42 U.S.C. § 1983. The *Ex parte Young* Doctrine is well-established in the law. 209 U.S. 123 (1908). Since FAIR is seeking injunctive relief from Mr. Walker in his official, not individual, capacity, it does not need to allege Mr. Walker's personal involvement in violating Member A's rights. FAIR only needs to identify the unconstitutional policy injuring Member A and the official who can enjoin the policy. FAIR has sufficiently done this as well.

The motion to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiff Foundation Against Intolerance and Racism, Inc., is a nonprofit organization established to defend the principle of equal protection and equal rights

P. Oppo. to D. Mot to Dismiss - 2
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

for all. Plaintiff's Complaint, Dkt. #1 (Complaint), ¶ 6. It engages in litigation against racially discriminatory diversity and inclusion efforts. *Id.*

One of FAIR's members, Member A, resides in Washington and wants to buy a home in the state. *Id.* ¶ 7. To that end, Member A has made several efforts to receive housing assistance. She received a VA Home Loan Certificate of Eligibility and attended a homeownership counseling program from HomeSight, a HUD certified financial educational and counseling agency. Declaration of Monica Harris (Harris Decl.), ¶ 5. She also regularly reviews the HUD website to determine if her city and neighboring areas are participating in the Housing Choice Voucher Homeownership Program so she can apply and use the assistance to purchase a home. *Id.*

Member A is familiar with state-provided assistance programs, as she has applied for and currently utilizes a few of them. She receives Social Security disability and VA disability benefits, a Housing Choice voucher, and Supplemental Nutrition Assistant Program benefits. *Id.* ¶ 6.

The Covenant Homeownership Program provides an opportunity for Member A to have the means to buy a home. However, it restricts that state benefit based on race. Complaint, ¶¶ 16–18. Under the Program, which the Washington State Housing Finance Commission established and administers, the state will give eligible first-time homebuyers downpayment and closing cost assistance in the form of a zero-interest *secondary* mortgage loan. *Id.* ¶ 11; Motion to Dismiss, Dkt. # 14 at 15. The Commission limits eligibility for this assistance to first-time homebuyers who identify as Black, Hispanic, Native American/Alaska Native, Native Hawaiian or other Pacific Islander, Korean, or Asian Indian. Additionally, first-time homebuyers whose parents, grandparents, or great-grandparents belong to these racial or ethnic groups may also qualify. Complaint, ¶ 17.

An applicant must also meet other requirements:

- The applicant must have a household income at or below 100 percent of the median income of the county in which he or she is buying a home.

- The applicant must be a "first-time homebuyer," which means he or she (1) has not owned a home within the past three years; (2) is a single parent and has only owned a home while married to a former spouse; (3) is a displaced homemaker and has only owned a home with a spouse; (4) has previously only owned a manufactured home; or (5) has previously owned property determined to be uninhabitable.

- The applicant or his or her parent, grandparent, or great-grandparent must have lived in Washington state before April 1968. *Id.* ¶¶ 12–15.

Applicants who satisfy these requirements are still not exempt from the requirement that they or their direct forebears identify as one of the specific races. *Id.* ¶¶ 12–17. The Commission explicitly specifies in the Program's "Frequently Asked Questions" that individuals from these racial groups are the only ones eligible for the Program. Exhibit A to Complaint, Dkt. #1-1 at 4. Consequently, the Commission categorically denies assistance to individuals who are (or whose ancestors are) Japanese-American, Jewish-American, Arab-American, and Caucasian-American, among others. *Id.*

The state predetermined that race would govern who would receive assistance from the Covenant Homeownership Program, as the legislation that led to the Program's creation—HB 1474—commands race-based assistance. Wash. Sess. Laws, ch. 340 (2023).[1] HB 1474 directs the Commission to complete a study that analyzes whether race-neutral approaches have been insufficient to remedy housing discrimination and its impact but preemptively declares that race-neutral

---

[1]https://legiscan.com/WA/text/HB1474/id/2809775. Plaintiff requests that the Court take judicial notice of the content of state legislation because it is a public record that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *CAT Scale Co. v. Conico Toro, Inc.*, No. 2:24-CV-03396-WLH-JC, 2024 WL 4875387, at *2 (C.D. Cal. Nov. 12, 2024).

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

approaches in state and federal programs are insufficient. *Id*. §§ 1, 5. With this built-in presumption, the legislation directs the Commission to create one or more special purpose credit programs to provide down payment and closing cost assistance for economically disadvantaged classes and permits the Commission to consider race as one of the characteristics in designing the program. *Id*. § 6.

Accordingly, the Commission completed a study concluding that a program that does not assist particular racial groups would be ineffective in remedying racial disparities. Exhibit A to Complaint, Dkt #1-1 at 7. It then launched the Covenant Homeownership Program on July 1, 2024. Complaint, ¶ 11. Steve Walker, the Commission's Executive Director, reiterated the state's rejection of race-neutral remedies, declaring after the Program's launch, "Race-neutral approaches, which we and others have tried for many, many years, aren't closing the racial homeownership gap."[2]

Member A meets the Covenant Homeownership Program's definition of a first-time homebuyer. Complaint, ¶ 7. Her household income is at or below the median income of the county where she resides and where she would like to buy a home. *Id*. She and her parents lived in Washington before April 1968. *Id*. She would be able to apply to the Covenant Homeownership Program and is interested in receiving its assistance if she were the right race. *Id*. Since she is white and identifies as European-American, Member A cannot apply to the Program. *Id*.

Another FAIR member residing in King County is also interested in applying to the Covenant Homeownership Program. Harris Decl. ¶ 7. He satisfies all the

---

[2] Heidi Groover, *Wash. Program to Help First-Time Homebuyers with History of Discrimination*, Seattle Times, Jan. 15, 2025, https://www.seattletimes.com/business/real-estate/wa-program-to-help-first-time-homebuyers-with-history-of-discrimination/. Plaintiff requests that the Court take judicial notice of Mr. Walker's statement because it is information available on a publicly available website. *Rock the Vote v. Trump*, No. 20-CV-06021-WHO, 2020 WL 6342927, at *3 n.1 (N.D. Cal. Oct. 29, 2020) (citing *Unsworth v. Musk*, No. 19-mc-80224-JSC, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019)).

P. Oppo. to D. Mot to Dismiss - 5
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

eligibility requirements for the Program except for the racial criteria. *Id*. Because this member is white, he cannot apply to the Program. *Id*.

## LEGAL STANDARD

The government moves to dismiss FAIR's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On a motion to dismiss under Rule 12(b)(1), the Court assumes the truth of all allegations in the complaint, *1st Tech. LLC v. Bodog Ent. Grp. S.A.*, No. C08-0872-JCC, 2009 WL 10855711, at *3 (W.D. Wash. Feb. 6, 2009), and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Similarly, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must take all facts in the complaint as true, make all reasonable inferences in favor of the plaintiffs, and determine whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Further, general factual allegations of injury resulting from Defendant's conduct may suffice. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). There is no "probability requirement" at the pleading stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Instead, plaintiffs must allege facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" that plaintiffs are entitled to relief. *Id*. A well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (cleaned up).

## ARGUMENT

### I.  FAIR Has Standing

FAIR has associational standing because it asserts the standing of its members. *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). The doctrine of

P. Oppo. to D. Mot to Dismiss - 6
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

associational standing permits an organization to "sue to redress its members' injuries, even without a showing of injury to the association itself." *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (citing *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). Associational standing is established when the plaintiff-organization shows that (1) one or more of its members "would otherwise have standing to sue in their own right;" (2) the interests of the suit "are germane to the organization's purpose;" and (3) the individual members' participation is not required. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)

FAIR satisfies each of the three prongs of this test. The Commission does not dispute that FAIR satisfies the second and third prongs of the test but argues that FAIR does not meet the first prong. The Commission contends that Member A would not have Article III standing in her own right because she has not suffered an "injury in fact." *Lujan*, 504 U.S. at 560–61 (1992); Motion to Dismiss at 20–26. To the contrary, Member A has independent standing to challenge the Commission for the type of injury she suffers from the Commission denying her equal treatment.

## A. Member A Has Standing to Seek Prospective Relief from the Government's Race-Based Unequal Treatment

Article III standing requires an "injury in fact" that is "fairly traceable" to the defendant and redressable by a favorable decision. *Lujan*, 504 U.S. at 560–61. A party that seeks declaratory or injunctive relief "must demonstrate that she has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that she will again be wronged in a similar way.'" *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002) (internal citations omitted).

Member A's "injury in fact" is the requirement that she compete for homebuyer assistance from the Covenant Homeownership Program on unequal footing because of the state's race-based preferences. *Ne. Fla. Chapter of Associated*

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

*Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.") (citing *Turner v. Fouche*, 396 U.S. 346, 362 (1970)). In a case seeking prospective relief, standing is satisfied by a showing that a racially discriminatory policy will prevent Plaintiffs from competing on an equal basis in the future. *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 666.

1. Member A Is Able and Ready to Apply for the Covenant Homeownership Program

To show an injury-in-fact, Member A only needs to demonstrate that she is "able and ready" to apply for homebuyer assistance under the Covenant Homeownership Program, and that a discriminatory policy prevents her from doing so on an equal basis. *See id.*; *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995).

FAIR sufficiently alleges that Member A is able and ready to apply for a loan from the Covenant Homeownership Program and that the Program's discriminatory racial requirements prevent her from doing so. Complaint, ¶¶ 6, 7. Member A satisfies the requisite income and residency requirements and first-time homebuyer definition to apply for the program. *Id.* ¶ 7. She further demonstrates her readiness and ability to apply for homebuying assistance from prior efforts for such assistance, including her receipt of a VA Home Loan Certificate of Eligibility, attendance at a homeownership counseling program, and recurring search for the availability of the Housing Choice Voucher Homeownership Program. Harris Decl. ¶ 5. Her receipt of other assistance from the government further demonstrates her ability and readiness to apply for state-provided homebuyer assistance. *Id.* ¶ 6.

Defendant mistakenly requires Member A to demonstrate the ability and readiness to "purchas[e] a home in Washington." Motion to Dismiss at 22–23. While Member A does want to purchase a home in the state, she is not challenging a policy

P. Oppo. to D. Mot to Dismiss - 8
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

that prevents her from purchasing a home on an equal basis; she is challenging a program that prevents her from *applying for assistance* to purchase a home on race-neutral terms. Thus, Member A must demonstrate an ability and readiness to apply for that assistance, and not the ability and readiness to purchase a home.

The showing that the Commission insists Member A make requires Member A to demonstrate that she would actually obtain assistance under the challenged Program to effectuate a home purchase. The Commission thus argues that Member A has not shown that she satisfies the underwriting and proof-of-residency requirements that would award her a loan.[3] FAIR does not have to demonstrate that Member A would obtain a loan under the Covenant Homeownership Program to show that the state prevents her from competing for that loan on an equal basis. And since Member A is categorically barred from applying for the Program because of her race to begin with, she does not have to go through a futile application process just for the state to inevitably deny her that assistance. The Commission's requirement that Plaintiff subject herself to a futile process to have standing to challenge that process is contrary to the law. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (individual is not required to "expose himself" to challenge the constitutionality of the law); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (plaintiff not required to avail themselves of the

---

[3] Defendant also suggests that applicants must "assert any personal or family history of discrimination." Motion to Dismiss at 10. This is not one of the criteria for applicants to be eligible to apply to the Program, as neither the Program guidelines nor Covenant Homeownership Act require applicants to assert such a history. Wash. Sess. Laws, ch. 340, *supra* note 1; Exhibit A to Complaint, at 3–4. The failure of the Program to require applicants to demonstrate that they have personally experienced discrimination and its use of racial categories to stereotype applicants as having suffered discrimination instead is precisely why the program is unlawful. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 218 (2023) (The twin commands of the Equal Protection Clause are that race may never be used as a "negative" and that it may not operate as a stereotype.).

P. Oppo. to D. Mot to Dismiss - 9
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

law if there is "realistic danger" she will be injured by its natural operation); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (same).

The Supreme Court has repeatedly held that candidates can challenge a discriminatory policy without subjecting themselves to the policy if they are "ready and able" to apply if the barrier is eliminated. For example, in *Northeastern Florida Chapter of Associated General Contractors of America*, the Supreme Court considered whether an association of general contractors had standing to challenge a city ordinance which provided preferential treatment to minority contractors. 508 U.S. at 658. The association did not attempt to show that its members would have received contracts absent the ordinance, but the Court nonetheless held that they had established an injury. As the Court explained, the injury in question was from the "denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 666. Further, "All that was necessary was that the plaintiff wished to be considered for the position." *Id.* at 664 (citing *Turner v. Fouche*, 396 U.S. at 362). *See also Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (parents have standing to challenge race-based public high school placement based on desire not to have to "compete for seats" in an unfair system); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (student had standing to challenge affirmative action rules even though he never applied as a transfer student because he demonstrated that he was "'able and ready' to apply as a transfer student should the [u]niversity cease to use race in undergraduate admissions").

Similarly, in *Carney v. Adams*, the Court evaluated whether a lawyer could have standing to challenge judicial eligibility requirements under the First Amendment. 592 U.S. 53, 60 (2020). As the Court explained, the question was simply whether the plaintiff had shown he was "able and ready" to apply. *Id.* Although the Court decided that on "this particular record" the plaintiff lacked standing, the Court confirmed that a plaintiff in general can show sufficient

P. Oppo. to D. Mot to Dismiss - 10
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

willingness to apply so as to have concrete and particularized injury from a barrier. *Id*. at 60, 63 (observing that in this "highly fact-specific case," the evidence at summary judgment had failed to show the plaintiff was "ready and able" to apply).

Similarly, the Ninth Circuit has confirmed that plaintiffs who are put at a disadvantage in a competitive process have standing to challenge that process, even without applying. For example, in *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, the Ninth Circuit held that a Planned Parenthood organization had standing to challenge a government funding opportunity, based on their allegation that they could not compete under the allegedly illegal criteria, even though they failed to put in any bids. *See* 946 F.3d 1100, 1106 (9th Cir. 2020). The court explained that it didn't matter whether Planned Parenthood could have won a bid under the illegal criteria; "[t]he key is that the injury is the increase in competition rather than the ultimate denial of an application, the loss of sales, or the loss of a job." *Id*. at 1108. In such a case, Planned Parenthood had only to show that it was "able and ready" to bid at the time the complaint was filed. *Id. See also Bras*, 59 F.3d 869 at 873–74 (plaintiff who challenged racial preference program had standing to challenge program based on evidence he had provided services for 20 years, was able and ready to continue providing services, but was disadvantaged by program).

Member A is in the same position as Planned Parenthood because she is able and ready to compete for a loan under the Covenant Homeownership Program, but is disadvantaged by the racial barrier that renders her application futile. And unlike the plaintiff in *Carney*, Member A's interest is more than simply that she would "consider" applying for assistance. Member A wants to apply for the Program and has a history of seeking out and accepting such assistance, but the Program undoubtedly keeps Member A out because of her race. So even if Member A completed the process of securing a first mortgage loan through the Commission,

P. Oppo. to D. Mot to Dismiss - 11
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

she would not get the secondary loan under the Program because she and her parents are the wrong race.

It is an astonishing demand by the Commission to have Member A endure the process of securing a loan she wouldn't be able to obtain to demonstrate readiness to a program she is ineligible for due to her race. There is no question that the Program gatekeeps assistance based on race, yet Defendant erroneously suggests that where the state chooses to erect that gate—either before or after her mortgage is underwritten, or whenever the state confirms her residency—determines Member A's injury. The barrier exists regardless of how far Member A gets in the application process. This barrier to competing equally for the Program is Member A's injury, not her inability to receive a Program loan.

Member A's ability and readiness to apply for homebuying assistance is greater than the ability and readiness of the religious schools in *Loffman v. California Dep't of Educ.*, 119 F.4th 1147, 1153–54 (9th Cir. 2024). There, the schools challenged a state requirement that they be nonsectarian to receive certification as special education providers. *Id.* at 1153–54, 1159. The court found that the schools failed to allege they were able and ready to serve as special education providers because they never alleged an intention to apply as such providers, nor did they allege that they would actually provide a special education. *Id.* at 1159. In contrast, Plaintiff alleges that Member A is ready and able to apply for a loan under the Covenant Homeownership Program if the Commission's program didn't exclude her. Complaint, ¶¶ 2, 6–7. She has undertaken previous efforts to obtain assistance to purchase a home which demonstrates her intention to apply for the Program and put its benefits toward a home purchase. Harris Decl. ¶ 5.

Member A's readiness and ability are also greater than that of the business loan applicant in *Carroll v. Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003). In *Carroll*, plaintiff challenged the race-based allocation of loans in the state's business

P. Oppo. to D. Mot to Dismiss - 12
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

loan program. *Id.* at 938, 941–42. Plaintiff sought to open a copy shop, but the court determined that even if plaintiff intended to apply for a loan, he lacked standing because "he has no work history with small business copy shops or any other entrepreneurial endeavors that might bolster his bona fides." *Id.* at 942–43. Here, Member A has a history of seeking out housing assistance that would establish her homebuyer bona fides beyond the basic intention to apply for a Program loan. Harris Decl. ¶¶ 5–6.

Moreover, the Commission's demand that Member A provide a greater demonstration of her ability and readiness improperly heightens the showing that FAIR must make for the prospective relief it seeks here. *See Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1186 (9th Cir. 2012) ("Because Braunstein's surviving claims are for damages rather than prospective relief, he must show more than that he is 'able and ready' to seek subcontracting work."). For the declaratory and injunctive relief that FAIR seeks, it is sufficient to show that Member A is able and ready to apply for assistance to buy a home to have standing to challenge Defendant's racially discriminatory homebuyer assistance program.

2. <u>Member A Is Adversely Affected by Defendant's Racial Barrier</u>

The Commission's demand for the identity of FAIR's injured members is unwarranted because the equal protection injury FAIR alleges is clear, and the Commission can sufficiently understand that injury from the Complaint's allegations to provide a response. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

For an organization to have associational standing, it is not always required to identify by name its injured members when (1) "it is relatively clear, rather than merely speculative, *that one or more* members have been or will be adversely affected by a defendant's action," and (2) "where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury[.]" *Id.* (emphasis added).

P. Oppo. to D. Mot to Dismiss - 13
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

Here, FAIR alleges that to be eligible for the challenged Covenant Homeownership Program, applicants or one of their ancestors must identify as one of the Program's preferred racial categories. Complaint, ¶¶ 16–17. The Commission does not dispute that the Program's eligibility criteria are "intentionally tailored to specific racial and ethnic groups." Motion to Dismiss at 16. FAIR alleges that Member A would be eligible to apply for the Program were it not for her race, which is not among the preferred races. Complaint, ¶¶ 7, 17–18. The Program's racial eligibility requirement therefore affects Member A adversely because it prevents her from applying to the Program. These allegations make the adverse effect of the racial barriers on Member A abundantly clear, precluding the requirement for FAIR to identify its other impacted members.

What appears to be unclear to the Commission is not whether Member A can apply equally for the Program's assistance, but whether Member A and other members could actually obtain loans under the challenged Program, which is not the operative injury that Member A suffers, as detailed above. The Commission's demand for the identities of FAIR's members to determine each individual member's circumstances is based on the recurringly mistaken belief that FAIR's members must show that they could actually obtain a Program loan. FAIR is not required to demonstrate that each one of its individual members can complete a mortgage underwriting, submit documentation of their residency, and be in a position to close on a home to allege that a racial barrier prevents them from applying to undergo this process on equal footing. Again, the injury to FAIR's members stems from the inability to compete on equal footing for a loan under the Program, and not the ultimate inability to obtain a loan. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666.[4] The Commission can

---

[4] Defendant's request to conduct jurisdictional discovery is based on his recurring misunderstanding of Plaintiff's injury. Thus, the Court should deny Defendant's request because Defendant seeks discovery of facts that Plaintiff does not need to

understand the injury of other members from the injury that Member A suffers, as these members share the same injury that arises from the same race-based eligibility criteria that the Commission can uniformly remedy.

Requiring FAIR to demonstrate the injuries of each of its individual members would additionally frustrate the requirement for associational standing that the participation of individual members in the litigation is not needed. When an organization seeks prospective relief, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Thus, Plaintiff does not need to provide individualized proof of its members' injuries "because neither the 'claims nor the relief sought require[] the District Court to consider the individual circumstances of any aggrieved [] member.'" *Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, 469 F. Supp. 2d 803, 817 (N.D. Cal. 2007) (quoting *International Union, United Auto. Workers v. Brock*, 477 U.S. 274, 287 (1986)). Plaintiff therefore has Article III standing without having to identify Member A and its other members and prove their individual injuries.

## II.  FAIR States a § 1983 Claim Against Executive Director Walker, in His Official Capacity

FAIR has alleged sufficient facts to state a claim under 42 U.S.C. § 1983 against Executive Director Steve Walker, in his official capacity. To state a cause of action under Section 1983, a plaintiff must allege (1) that a right secured by the

---

show, which is that its members could ultimately obtain a loan under the challenged Program. This would amount to an improper fishing expedition, and the Court should not permit jurisdictional discovery for this purpose. *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012). Plaintiff's allegations that its members are able and ready to compete for a Program loan but cannot do so on equal footing because of the Program's racial barriers are sufficient, particularly given that courts must accept as true all material allegations of the Complaint and must construe the Complaint in favor of Plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021). When sued for injunctive relief, a state official in his or her official capacity is a person under Section 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), and an official-capacity suit pleads an action against an entity of which the state official is an agent, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In this circumstance, FAIR is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violations. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Id.* An official is the proper defendant when "'he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to the plaintiff's claims.'" *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)).

FAIR brings its Section 1983 claim for injunctive relief against Mr. Walker in his official capacity, causing Mr. Walker to constitute a person under that section. Complaint, ¶ 8. FAIR is not suing Mr. Walker in his individual capacity. *Id.* Thus, the organization does not have to allege that Mr. Walker was personally involved in violating FAIR members' right to equal protection under the Fourteenth Amendment. Rather, FAIR sufficiently identifies the Commission's Covenant Homeownership Program as the policy that violates the Equal Protection Clause, and Mr. Walker can enjoin it as someone who oversees the Commission's programs. *Id.*

P. Oppo. to D. Mot to Dismiss - 16
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

III.    **The Court Should Grant Leave to Amend**

If the Court grants the state's motion, it should provide FAIR with leave to amend the Complaint. Granting leave to amend "'is to be applied with extreme liberality.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Unless there is a clear showing that amending a complaint to satisfy pleading requirements would be futile, a district court must give Plaintiff the opportunity to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In the event that the Court finds FAIR's Complaint deficient (it is not), it should grant the organization leave to amend because amending would not be futile. Although the Complaint sufficiently alleges that Member A has standing, the Declaration of Monica Harris, FAIR'S Executive Director, demonstrates that additional facts can be included that will further bolster Member A's standing and satisfy pleading requirements.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

## LCR 7(e)(6) Certification

The undersigned certifies that this memorandum contains 5,619 words, in compliance with the Local Civil Rules.

P. Oppo. to D. Mot to Dismiss - 17
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

DATED:  January 24, 2025.

Respectfully submitted:

PACIFIC LEGAL FOUNDATION

*s/  Wesley Hottot*
WESLEY HOTTOT, WSBA # 47539
1425 Broadway #429
Seattle, Washington 98122
Telephone: (425) 576-0484
WHottot@pacificlegal.org

*s/  Andrew Quinio*
ANDREW QUINIO
California Bar # 288101*
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
AQuinio@pacificlegal.org

*s/  Christopher D. Barnewolt*
CHRISTOPHER D. BARNEWOLT
D.C. Bar # 90020413 *
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
CBarnewolt@pacificlegal.org

*Counsel for Plaintiff*
*\* Pro hac vice*

P. Oppo. to D. Mot to Dismiss - 18
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484