HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE AND RACISM, INC, <br><br> Plaintiff, <br><br> v. <br><br> STEVE WALKER, in his official capacity as Executive Director of the Washington State Housing Finance Commission, <br><br> Defendant. | No. 2:24-cv-01770-JHC <br><br> DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT <br><br> NOTE ON MOTION CALENDAR: FEBRUARY 7, 2025 |

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  ARGUMENT IN REPLY ...............................................................................................2

    A.  FAIR Lacks Article III Standing............................................................................ 2

        1.  Member A's failure to qualify for one of the Commission's first mortgage loan programs is fatal. ........................................................... 3

        2.  FAIR fails to allege that Member A is otherwise "able and ready" to apply to the Program. ................................................................ 10

    B.  FAIR's § 1983 Damages Claim Must Be Dismissed............................................ 13

III. CONCLUSION..............................................................................................................14

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS i
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

**Federal Cases**

*Aaron Private Clinic Mgmt. LLC v. Berry*,
　912 F.3d 1330 (11th Cir. 2019) .................................................................................... 5, 6

*Alexandre v. Amazon.com, Inc.*,
　No. 22-CV-1459, 2024 WL 2445705 (S.D. Cal. May 23, 2024) ...................................... 9, 10

*Allen v. Wright*,
　468 U.S. 737 (1984) ............................................................................................................ 4

*Barber v. Bryant*,
　860 F.3d 345 (5th Cir. 2017) .............................................................................................. 7

*Bolduc v. Amazon.com, Inc.*,
　No. 22-CV-00615, 2024 WL 1808616 (E.D. Tex. Apr. 25, 2024) ..................................... 8, 9

*California Rest. Ass'n v. City of Berkeley*,
　89 F.4th 1094 (9th Cir. 2024) ............................................................................................ 2

*Carney v. Adams*,
　592 U.S. 53 (2020) ........................................................................................................ 2, 11

*Carroll v. Nakatani*,
　342 F.3d 934 (9th Cir. 2003) ............................................................................................ 11

*Correll v. Amazon.com, Inc.*,
　No. 3:21-CV-01833 BTM, 2022 WL 5264496 (S.D. Cal. 2022) ......................................... 10

*Davis v. Guam*,
　932 F.3d 822 (9th Cir. 2019) ............................................................................................ 12

*Firs Home Owners Ass'n v. City of SeaTac*,
　No. C19-1130RSL, 2022 WL 2209622 (W.D. Wash. June 21, 2022) .................................. 12

*Gratz v. Bollinger*,
　539 U.S. 244 (2003) ............................................................................................................ 8

*Loffman v. California Dep't of Educ.*,
　119 F.4th 1147 (9th Cir. 2024) .................................................................................. 4, 5, 11

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
　508 U.S. 656 (1993) .................................................................................................. 7, 8, 10

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS ii
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Case 2:24-cv-01770-JHC     Document 22     Filed 02/07/25     Page 4 of 18

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ............................................................................................................. 8

*Planned Parenthood of Greater Washington and N. Idaho v. U.S. Dep't of Health & Human Servs.*,
  946 F.3d 1100 (9th Cir. 2020) ....................................................................................... 8, 11

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
  526 F.3d 1151 (8th Cir. 2008) ........................................................................................ 5, 7

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ........................................................................................... 13

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ............................................................................................................ 4

**State Statutes**

Wash. Rev. Code § 43.181.040(4)(c)(i)(B) ...................................................................... 12

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS iii
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.  INTRODUCTION

In response to Executive Director Walker's Motion to Dismiss ( "Motion"), FAIR fails to add any substantive allegations, let alone admissible evidence, establishing standing. Instead, relying principally on an attorney declaration lacking personal knowledge about Member A, FAIR reiterates the meritless allegations in the Complaint; adds a few "new" allegations based on hypotheticals and conjecture; and repeats inflammatory rhetoric about the Washington State Housing Finance Commission ("Commission") and the Covenant Homeownership Program ("Program"). FAIR's brief suffers from the same flaws as its Complaint.

While FAIR has a generalized grievance about the Covenant Homeownership Program, FAIR fails to identify any particularized injury sufficient to establish standing. First, FAIR fails to allege that Member A meets the most basic criteria for participation in the Program, namely, that she has qualified—or even could qualify—for a first mortgage loan. As a result, she suffers no injury from her ineligibility for the Program's secondary loans. Her allegation that applying for a first loan would be "futile" ignores contrary case law, and her allegation that doing so would be "financially ruinous" is baseless.

Second, FAIR is unable to show, beyond conclusory allegations and conjecture, that Member A is "able and ready" to meet the Program's other race-neutral eligibility criteria, including income and residency requirements. Any alleged injury to Member A is too hypothetical and remote to qualify as an injury-in-fact.

Third, the facts FAIR asserts to support standing are admitted by the declarant to be based on information and belief, rather than admissible personal knowledge. Unverified hearsay evidence cannot establish standing.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 1
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Accordingly, the Court should dismiss FAIR's Complaint for lack of subject-matter jurisdiction. The Court should not allow FAIR leave to amend because doing so would be futile. But at a minimum, FAIR's § 1983 damages claim should be dismissed with prejudice because FAIR admits it seeks only declaratory and injunctive relief.

## II.  ARGUMENT IN REPLY

### A.  FAIR Lacks Article III Standing

To establish standing, FAIR agrees that it must show that "(1) at least one of its members has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024). FAIR also agrees, in the context of this equal protection challenge, it is FAIR's burden to show that at least one of its members—here, Member A—is "ready and able" to apply to the allegedly discriminatory program at issue—the Program. *Carney v. Adams*, 592 U.S. 53, 60 (2020).

In response to Executive Directive Walker's arguments that FAIR is unable to meet its burden, FAIR claims Member A is "able and ready" to apply to the Program because she "has made several efforts to receive housing assistance." Dkt. # 19 at 8. FAIR provides a hodgepodge of "based on information and belief" unverified claims to support the conclusory statement that Member A is "able and ready to complete for a loan under the Program." *Id*. at 8, 11. In addition, FAIR alleges that applying for a first mortgage loan would be futile. *Id*. at 9.

FAIR's arguments fail for two reasons. First, accepting FAIR's allegations regarding Member A's "prior efforts for [homebuying] assistance," FAIR does not dispute—and therefore

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 2
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

concedes—that Member A has failed to meet a necessary (race-neutral) *precondition* for participation in the Program: Member A must qualify for one of the Commission's *first* mortgage loan programs, each of which has its own qualifications, as well as lender underwriting requirements such as income limits, acquisition costs, and guidelines for credit. *See* Dkts. ## 15-2, 15-5. Because Member A has not, and may never, qualify for this first mortgage loan precondition, FAIR's claim that Member A is suffering a competitive disadvantage is too theoretical and remote to support standing.

Second, FAIR is unable to show, beyond conclusory allegations and conjecture, that Member A is "able and ready" to meet the Program's other race-neutral eligibility criteria, including income and residency requirements. The Harris Declaration regarding Member A is generally hearsay (based on "information and belief" rather than personal knowledge), not admissible testimony. *See* Dkt. # 20.

Because FAIR cannot establish as a matter of law that Member A is "able and ready" to apply to the Program, FAIR fails to establish any injury sufficient to confer standing.

### 1. Member A's failure to qualify for one of the Commission's first mortgage loan programs is fatal.

The distinction between the Commission's first mortgage loan programs and the Covenant Homeownership Program is fatal to Member A's standing. As FAIR concedes, the Program provides assistance for first-time homebuyers in the form of a zero-interest *secondary* mortgage loan, which *must* be used in conjunction with a *first* mortgage loan secured through one of the loan programs offered by the Commission to homebuyers of all races. Dkt. # 19 at 3; Dkt. # 1-1 at 4 ("As with all Commission home loans, homebuyers must meet lender underwriting requirements, i.e. qualify for a home loan from a lending institution."). Only homebuyers who qualify for such a

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

first mortgage loan would be eligible for assistance from the Program. And only those qualified homebuyers who then could *not* be referred for a secondary mortgage loan could have standing to challenge the Program. *See* Dkt. # 14 at 17–18. Otherwise, the person cannot claim to have been discriminated against. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 755 (1984) (plaintiffs who "were not personally subject to the challenged discrimination" lack an injury-in-fact); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). Importantly, Member A is not required "to first take out a partial loan for a home she could not afford" in order to be eligible for the Program, as FAIR erroneously suggests. Dkt. # 19 at 2. But Member A must show that she is qualified for one of the Commission's first mortgage loan programs.

FAIR does not dispute that Member A has *not* qualified for a first mortgage loan. *See* Dkt. # 1; Dkt. # 19 at 3, 8. Nor does FAIR even attempt to allege that Member A *could* qualify for a first mortgage loan. FAIR vaguely argues that qualifying for one of Commission's first mortgage loan programs would be a "futile" act because she would not qualify for the Program's downpayment and closing cost assistance. Dkt. # 19 at 9, 11–12. But this argument misses the mark. Qualifying for a first mortgage loan would not be "futile" because if she does not qualify, then she could not possibly be eligible for the Program. And if she cannot be eligible for the Program, then she cannot demonstrate a concrete and particularized injury.

*Loffman v. California Department of Education*, 119 F.4th 1147, 1159 (9th Cir. 2024) is instructive. There, religious schools challenged California's law granting certain nonpublic schools funding for students with disabilities. Among the requirements to be eligible for funding

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 4
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

was these nonpublic schools be "nonsectarian." *Id.* at 1152. The religious schools argued that the nonsectarian requirement erected a discriminatory barrier to them receiving funds, alleging "[o]n information or belief," that they met every other requirement for the program. *Id.* at 1161. The Ninth Circuit held this was insufficient to establish standing because "conclusory allegations of this sort are not entitled to be assumed true at the motion to dismiss stage." *Id.* Without specific allegations demonstrating that the schools satisfied the myriad other eligibility requirements of the program, they did not have standing to challenge the "nonsectarian" criterion. *Id.* For similar reasons, courts routinely require plaintiffs demonstrate eligibility before they can challenge a government program's requirements. *See Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition."); *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019) (plaintiff lacked standing to challenge regulations applying to medical clinics when he failed to allege he had taken any "concrete steps—such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients"). FAIR fails to allege that Member A has qualified, or even could qualify, for the Commission's first mortgage loan programs, and therefore fails to allege a concrete, particularized injury.

That Member A "has made several efforts to receive housing assistance" and has received other types of assistance from different government agencies in the past does not establish a particularized injury. Dkt. # 19 at 3, 7–8. FAIR claims Member A received a VA Home Loan

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 5
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Certificate of Eligibility ("COE"), *id*. at 8, but conveniently fails to mention that, while a COE confirms "service history and duty status" for homebuyers interested in a VA-backed home loan, those homebuyers must still "meet [their] lender's credit and income loan requirements to receive financing."[1] In other words, a COE does not demonstrate Member A's ability or readiness to compete for the Program—a zero-interest *secondary* mortgage loan.

Additionally, FAIR emphasizes that Member A "regularly reviews" the HUD website to determine whether HUD's Housing Choice Voucher ("HCV") Homeownership Program is available in "her city and neighboring areas . . . so she can apply and use the assistance to purchase a home." *Id*. at 3. But that allegation cuts *against* Member A's ability and readiness to qualify for a first mortgage loan and apply for a second mortgage loan under the Program. FAIR fails to explain that the HCV Homeownership Program allows families that have been issued a HCV by their local public housing authority—a Section 8 or rental assistance voucher—to use their voucher toward homeownership expenses.[2] The HCV Homeownership Program is *only* available in areas where it has been established by a local public housing authority.[3] FAIR claims Member A is waiting for a local public housing authority to establish an HCV Homeownership Program in her location so she can use her voucher to pay for monthly homeownership expenses, and without that assistance, Member A would have to "take out a partial loan for a home she could not afford," which would be "personally ruinous." Dkt # 19 at 2. Thus, based on FAIR's own allegations, until

---

[1] U.S. Department of Veteran Affairs, *Eligibility for VA Home Loan Programs*, https://www.va.gov/housing-assistance/home-loans/eligibility/ (last accessed Feb. 6, 2025).
[2] *See* U.S. Department of Housing and Urban Development, *HVC Homeownership Program: Program Overview*, https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/homeownership (last accessed Feb. 6, 2025). The HCV Homeownership Program is also limited to first-time homeowners who have received housing counseling and meet minimum income requirements. *Id*.
[3] *Id*.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 6
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

a local public housing authority establishes an HCV Homeownership Program in a location where Member A is interested in purchasing, Member A likely will not be able to qualify for a first mortgage loan, regardless of any downpayment or closing cost assistance. *See Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) ("An injury that is based on a 'speculative chain of possibilities' does not confer Article III standing.") (cleaned up). This could explain why FAIR does not assert that Member A has qualified, or could qualify, for a first mortgage loan through the Commission's programs.

Moreover, there are other first-time homeowner programs in Washington identified in the Study. Dkt. # 15-1 at 97–101 (describing race-neutral homeownership programs, including downpayment assistance programs, first mortgage loan programs, and alternative homeownership models). Member A apparently has not even looked into these. FAIR also notes that Member A currently utilizes other "state assistance programs," but this suggests that Member A is generally able and ready to seek "assistance from the government"—*not* that Member A is financially able and ready to qualify for a first mortgage loan and apply for a second mortgage loan through the Program. In sum, because FAIR does not allege that Member A *has* qualified or *could* qualify for one of the Commission's first mortgage loan programs, Member A lacks standing to challenge the Program. *See Pucket*, 526 F.3d at 1161 (plaintiff lacks standing if she does not take steps to satisfy a precondition to enjoy a benefit).

The cases that FAIR cites to support its contrary position are inapposite. For example, in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 668 (1993), the plaintiff association "alleged that its members regularly bid on construction contracts in Jacksonville, and that they would have bid on contracts

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 7
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

set aside pursuant to the city's ordinance were they so able." Here, unlike the plaintiff in *Northeastern*, FAIR has not alleged that Member A is financially able and ready to compete for a secondary mortgage loan under the Program.

Similarly, in *Planned Parenthood of Greater Washington and North Idaho v. U.S. Department of Health & Human Services*, 946 F.3d 1100, 1107–08 (9th Cir. 2020), the Ninth Circuit held that the plaintiffs, as *past recipients* of federal funding, adequately demonstrated they were able and ready to seek the same federal funding, but could not effectively compete due to new bid requirements imposed by the federal government. As the Ninth Circuit explained, "[a]n agency action that increases competition tilts the playing field for parties that were *already competing*, and those parties suffer an injury-in-fact." *Id.*, 946 F.3d at 1108 (emphasis added). Here, Member A has not qualified for a first mortgage loan, which is required for her to "compete" for a second mortgage loan under the Program. *See* Dkt. # 19 at 11–12. Member A is therefore not "in the same position as Planned Parenthood," as FAIR erroneously suggests. *Id.*[4]

Contrary to FAIR's contentions, multiple courts have dismissed similar discrimination claims when plaintiffs did not establish standing because they failed to show they were "able and ready" to compete for a particular economic opportunity. In *Bolduc v. Amazon.com, Inc.*, No. 22-CV-00615, 2024 WL 1808616 (E.D. Tex. Apr. 25, 2024), a plaintiff unsuccessfully challenged Amazon's award of $10,000 grants to eligible Black/African American, Hispanic/Latinx, and

---

[4] The other cases cited by FAIR are similarly distinguishable. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007) (plaintiff organization of Seattle parents had standing to challenge student assignment plans that relied upon race to determine which public schools certain children could attend where the "group's members have children in the district's elementary, middle, and high schools"); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (plaintiff student had standing to challenge University of Michigan's use of race in undergraduate admissions where plaintiff applied to school and "was denied admission even though an underrepresented minority applicant with his qualifications would have been admitted" and was able and willing to transfer).

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 8
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Native American/Indigenous entrepreneurs in Amazon's Delivery Service Partner ("DSP") program. To be considered for the diversity grants, grantees first had to qualify for the DSP program by passing a "multitiered . . . lengthy, competitive, and highly selective" application process. *Id.* at *4. The diversity grant was designed to provide diverse DSP entrepreneurs with startup funding to build businesses, reducing the barriers to entry for Black, Latinx, and Native American entrepreneurs. *Id.* Like Member A, the plaintiff in *Bolduc* was white and claimed she was "able and ready to apply" for Amazon's diversity grant, but was ineligible for the program due to her race. *Id*. And, like Member A, the *Bolduc* plaintiff claimed she was "able and ready" to compete for Amazon's diversity grant, despite failing to apply to the DSP program. *Id.* at *2.

The *Bolduc* court dismissed plaintiff's complaint under Rule 12(b)(1), finding that the plaintiff's alleged injuries were hypothetical and conjectural. *Id.* at *4. The *Bolduc* court concluded that the plaintiff failed to allege an injury-in-fact, explaining that it was a "far cry from certainty" that the plaintiff would be selected for the DSP program and that an "unpredictable chain of hypothetical events stands in the way" of potentially experiencing the alleged discrimination. *Id.* The court specifically rejected the plaintiff's argument that she was deterred from applying to the DSP program, which had no racial eligibility criteria, holding instead that plaintiff's failure to apply to the DSP program was "fatal to her standing." *Id*. at *7.

In *Alexandre v. Amazon.com, Inc.*, No. 22-CV-1459, 2024 WL 2445705 (S.D. Cal. May 23, 2024), the court dismissed a similar challenge to Amazon's diversity grant for lack of standing. The plaintiffs in *Alexandre* alleged that because of their ineligibility for the diversity grant based on their race, it would have been futile to apply to the DSP program, so they did not apply. *Id.* at *4. The *Alexandre* court rejected the plaintiffs' futility argument, concluding that the plaintiffs had

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 9
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

not established that "Amazon implements unlawful discriminatory practices in the DSP application process or that they cannot apply to the DSP program without subjecting themselves to racial discrimination." *Id.* at *6. The court held that "[b]ecause Plaintiffs are unwilling to apply for DSP contracts, which they are by no means guaranteed to receive, their purported injury . . . is merely hypothetical and conjectural." *Id*. at *5; *see also Correll v. Amazon.com, Inc.*, No. 3:21-CV-01833 BTM, 2022 WL 5264496, at *3 (S.D. Cal. 2022) (dismissing plaintiff's challenge to another Amazon diversity initiative because the plaintiff failed to plausibly allege that he was able and ready to participate in that initiative).

As in *Bolduc*, *Alexandre*, and *Correll*, this Court should find that Member A lacks standing to challenge the Program due to her failure to attempt to qualify, let alone actually qualify, for a first mortgage loan through one of the Commission's loan programs—a precondition that Member A must meet in order to "compete" for a secondary mortgage loan under the Program.

### 2. FAIR fails to allege that Member A is otherwise "able and ready" to apply to the Program.

Even assuming that Member A could qualify for one of the Commission's first mortgage loan programs, she would still lack standing to bring this equal protection challenge. A deterred applicant, such as Member A, has standing only if she is both "able and ready" to apply to the allegedly discriminatory program if the alleged selection criteria were different. *Northeastern*, 508 U.S. at 666. Here, FAIR fails to allege that she is "ready and able" to meet the Program's remaining race-neutral criteria.

First, FAIR is incorrect that Member A's alleged mere *interest* in purchasing a home in Washington is sufficient to establish standing. Dkt. # 19 at 8–9; *see* Dkt. # 20 ¶ 5. As discussed above, in order to establish standing, FAIR must allege facts demonstrating that Member A is "able

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 10
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and ready" to become a homebuyer and apply for assistance from the Program—"[a] few words of general intent" is not enough. *Carney*, 592 U.S. at 54; *Planned Parenthood*, 946 F.3d at 1108–09. In its response brief, FAIR argues that Member A's "history of seeking out housing assistance" is sufficient. Dkt. # 19 at 8, 13. But FAIR ignores that the Program is only available to *homebuyers*. *See* Dkt. # 1-1 at 4. "Housing assistance" typically refers to rental assistance, such as the housing voucher Member A allegedly receives now. *See* Dkt. # 19 at 2, 8. The only homebuyer assistance program FAIR mentions does not exist in Member A's location. *See supra* § II.A.1. And it appears that Member A requires monthly assistance in order to afford to own a home. *Id*. Thus, based on FAIR's own representations, Member A is not "able and ready" to become a homebuyer. *See* Dkt # 19 at 2–3.

Accordingly, Member A's "readiness and ability" to apply to the Program is not "greater than," but rather analogous to, the plaintiffs in *Carney*, *Loffman*, and *Carroll* who lacked standing to bring their respective equal protection challenges. *See Carney*, 592 U.S. at 63–66 (plaintiff lacked standing to challenge discriminatory judgeship program where "[his] words 'I would apply . . . ' stand alone without any actual past injury, without reference to any anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence."); *Carroll v. Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003) (plaintiff lacked standing to challenge racial preferences in government loan program where plaintiff filed only a "symbolic, incomplete application" and did not demonstrate an "ability to compete" for the loan); *Loffman*, 119 F.4th at 1161–62.

Second, FAIR fails to allege that Member A or her ancestors belonged to groups that were

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 11
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

subject to racially restrictive covenants in the past as required under the Covenant Homeownership Act. Wash. Rev. Code § 43.181.040(4)(c)(i)(B) (2023). This requirement that the homebuyer or their ancestor was subject to discrimination is a race-neutral criteria of the program that Member A has failed to allege she meets. *See Davis v. Guam*, 932 F.3d 822, 834 (9th Cir. 2019) (explaining that ancestry and race are legally distinct concepts and ancestry is not inherently a proxy for race); *Firs Home Owners Ass'n v. City of SeaTac*, No. C19-1130RSL, 2022 WL 2209622, at *5 (W.D. Wash. June 21, 2022) (same for language).

Third, FAIR incorrectly argues that it "does not have to demonstrate" that Member A meets "proof-of-residency requirements that would award her a loan." Dkt. # 19 at 9. In order to be eligible for assistance under the Program, homeowners "must submit the family history documentation to the Commission at the time of loan reservation of funds if not sooner." Dkt. # 15-5 at 7. Therefore, FAIR must allege that Member A is "able and ready" to submit her residency documentation to the Commission. FAIR's refusal or inability to make that showing confirms that Member A lacks standing to challenge the Program.

Fourth, FAIR has not even attempted to carry its burden in response to Executive Director Walker's factual challenge to standing. Executive Director Walker supported his factual challenge with the numerous publicly available documents detailing the Program's various eligibility requirements, including the Commission's first mortgage loan programs. *See* Dkts. ## 15-1, 15-2, 15-3, 15-4, & 15-5. In response, FAIR submitted a declaration from Monica Harris, FAIR's Executive Director, which contains hearsay-within-hearsay relating to Member A's interest in applying to the Program and a second FAIR member who was not referenced in the Complaint but is claimed also to be "interested in applying for the Covenant Homeownership Program." Dkt. #

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 12
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

20 ¶¶ 5–7.

FAIR argues that it should be permitted to amend its Complaint to add facts from the Harris Declaration, which FAIR claims "will further bolster Member A's standing and satisfy pleading requirements." Dkt. # 19 at 17. However, as discussed above, the additional allegations in the Harris Declaration do not establish standing. If FAIR *could* have alleged sufficient facts to demonstrate standing, it would have done so. More fundamentally, an offer to add *allegations* is not enough. The Ninth Circuit has made clear that "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion *must* furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (emphasis added). FAIR has failed to offer any such evidence, beyond the hearsay-within-hearsay in the Harris Declaration.

### B. FAIR's § 1983 Damages Claim Must Be Dismissed

Executive Director Walker moved to dismiss FAIR's § 1983 claim because FAIR failed to identify any acts that Executive Director Walker personally took in violation of the Equal Protection Clause and Executive Director Walker was immune from FAIR's § 1983 claim for damages. Dkt. # 14 at 20–21. In responding to these arguments, FAIR confirms that it is seeking *only* injunctive relief against Executive Director Walker. Dkt. # 19 at 16. And FAIR does not dispute that its damages claim against Executive Director Walker would be barred by the Eleventh Amendment. Dkt. # 19 at 16. The Court should therefore dismiss with prejudice FAIR's § 1983 damages claim, as currently pled in the Complaint.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 13
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### III. CONCLUSION

As demonstrated in Executive Director Walker's Motion, the factual allegations of the Complaint are insufficient to establish standing. The Harris Declaration, which is inadmissible hearsay, does not solve that deficiency. Nor does FAIR address the fundamental problem that Member A has not attempted to qualify for the Commission's first mortgage loan programs, a prerequisite to potential qualification for the Covenant program at issue. Finally, FAIR admits it is not seeking damages and those claims should be dismissed.

I certify that this memorandum contains 4,178 words, in compliance with the Local Civil Rules.

DATED this 7th day of February, 2025.

PACIFICA LAW GROUP LLP

*s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie L. Lisagor, WSBA #39946
Erica Coray, WSBA #61987
Attorneys for Defendant Steve Walker

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 14
No. 2:24-cv-01770-JHC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750