UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE AND RACISM, INC., <br><br> Plaintiff, <br><br> v. <br><br> STEVE WALKER, in his official capacity as Executive Director of the Washington State Housing Finance Commission, <br><br> Defendant. | CASE NO. 24-cv-01770-JHC <br><br> ORDER RE: MOTION TO DISMISS |

# I

## INTRODUCTION

This matter comes before the Court on Defendant's motion to dismiss. Dkt. # 14. Plaintiff, Foundation Against Intolerance and Racism, Inc. (FAIR), claims that the Covenant Homeownership Program—a special purpose credit program administered by the Washington State Housing Finance Commission and designed to reduce racial disparities in homeownership—violates the Equal Protection Clause of the Fourteenth Amendment. Dkt. # 1. Defendant Steve Walker, Executive Director of the Washington State Housing Finance Commission, says that Plaintiff lacks standing to pursue its claims, and he seeks dismissal under

ORDER RE: MOTION TO DISMISS - 1

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. # 14.  For the reasons discussed below, the Court GRANTS the motion.

## II

### BACKGROUND

A.     Factual Background

This factual background is based on the allegations in the complaint, *see* Dkt. # 1, which the Court accepts as true on a Rule 12(b)(6) motion to dismiss.[1]

Washington Governor Jay Inslee signed HB 1474, the Covenant Homeownership Act, in May 2023.  Dkt. # 1 at 3–4.  The Act commissioned a study to investigate racial disparities in homeownership in Washington state and to evaluate the feasibility of various programs intended to reduce such disparities.  *Id.* at 4; *see* Dkt. # 15-5 at 1.[2]  As a result of the Act, in July 2024, the Washington State Housing Finance Commission launched the Covenant Homeownership Program to provide "downpayment and closing cost assistance for first-time homebuyers in the form of a loan, secondary to the primary mortgage loan."  Dkt. # 1 at 4; Dkt. # 1-1 at 2.

An applicant must meet several eligibility requirements to take advantage of the Covenant Homeownership Program.  Dkt. # 1 at 4.  First, the applicant must have a household income at or below 120% of the area median income for the county where the home is located.  *Id.*; *see* Dkt. # 23-1 (showing this requirement was amended from 100% to 120% after the complaint was filed).  Second, the applicant must be a first-time homebuyer.  Dkt. # 1 at 4.  The Program defines a first-time homebuyer as someone who (1) "has not owned a home within the

---

[1] For purposes of Defendant's factual challenge to Plaintiff's standing under Rule 12(b)(1), however, Plaintiff's allegations must be supported by "competent proof."  *See Bowen*, 118 F.4th at 1142. This requirement is discussed further in Section III.B.2, *infra*.

[2] The Court takes judicial notice of the Covenant Homeownership Program documents introduced by Defendant outside the complaint because they come from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2); *see* Dkt. ## 15-1, 15-2, 15-3, 15-4.

ORDER RE: MOTION TO DISMISS - 2

past three years"; (2) "is a single parent and has only owned a home while married to a former spouse"; (3) "is a displaced homemaker and has only owned a home with a spouse"; (4) "previously only owned a manufactured home"; or (5) "previously owned property determined to be uninhabitable." *Id*; *see* Dkt. # 1-1 at 5.  Third, the applicant or their parent, grandparent, or great-grandparent must have lived in Washington state before April 1968. Dkt. # 1 at 4.  Fourth, the applicant or their parent, grandparent, or great-grandparent must be Black, Hispanic, Native American/Alaskan Native, Native Hawaiian or other Pacific Islander, Korean, or Asian Indian. *Id*.  The applicant must provide documentation to prove they meet the residency and race requirements, but no proof is required to show the applicant or their relatives personally experienced racial discrimination when trying to buy a home. *Id.* at 5.

A FAIR member, identified as Member A, wishes to buy a home in Washington state but says she is ineligible to apply for the Program solely because of her race. *Id.* at 7.  She identifies as "European-American" and maintains that she meets the Program's household income, first-time homebuyer, and residency requirements. *Id.*  She says that if the Program had only race-neutral requirements, she would be "ready, willing, and able to apply and be considered for a loan under the Program." *Id.*

B.      Procedural History

Plaintiff claims that the Covenant Homeownership Program violates the Equal Protection Clause of the Fourteenth Amendment because the Program discriminates on the basis of race. *Id.* at 6.  Plaintiff further claims the Program's racial classification does not serve a compelling state interest and Defendant has not specifically identified any racial discrimination to be remedied by the Program. *Id.*  Plaintiff adds that even if Defendant could demonstrate the Program's racial classification serves a compelling government interest, Defendant cannot prove the Program's race eligibility requirements are narrowly tailored to achieve that interest. *Id.*

ORDER RE: MOTION TO DISMISS - 3

Plaintiff seeks a judgment declaring the race eligibility preference in the Covenant Homeownership Program violates the Equal Protection Clause, a permanent injunction prohibiting Defendant from enforcing the challenged racial preference requirement, an order requiring Defendant to implement eligibility criteria that provide housing benefits without regard to the race of applicants, attorney's fees and costs, and $1.00 in nominal damages. *Id.* at 7.

Defendant moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. # 14; *see* Fed. R. Civ. P. 12(b)(1), 12(b)(6). Defendant argues Plaintiff does not have Article III standing to bring a claim on behalf of its members because it does not show Member A has standing to sue on her own. Dkt. # 14 at 19–20. According to Defendant, Member A does not have standing because she does not provide the requisite proof to show she is, in fact, "ready, willing, and able" to meet the race-neutral criteria of the Covenant Homeownership Program. *Id.* at 22–25. Defendant further contends that Member A must be identified by name before Plaintiff can establish one of its members has standing. *Id.* at 25. And Defendant says that Plaintiff's claim for nominal damages is barred by the Eleventh Amendment. *Id.* at 29–30.

### III

#### DISCUSSION

A.  Motion to Dismiss Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Upon such a motion, a court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). But a "court need not . . . accept as true allegations that

contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

B.  Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing defines these Constitutional limits and "identif[ies] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). If a plaintiff has no standing to sue, the court lacks subject-matter jurisdiction and the complaint must be dismissed in its entirety. *Id.*; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

1.  Associational Standing

Organizations can assert standing in their own right or on behalf of their members. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (citations omitted). Plaintiff asserts standing on behalf of its members. Dkt. # 1 at 2. To show it meets the requirements of associational standing, FAIR must establish (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests at stake are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citation omitted).

The parties' dispute is based solely on the first of these requirements. Dkt. # 14 at 13. To satisfy this prong, Plaintiff must make "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (internal

ORDER RE: MOTION TO DISMISS - 5

citation and emphasis omitted). But this does not necessarily mean the member must be identified by name. Instead, "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, [the Ninth Circuit] see[s] no purpose to be served by requiring an organization to identify by name the member or members injured." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *overruled on other grounds as recognized in Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1176-77 (9th Cir. 2024).

Accepting the allegations in the complaint as true and construing them in the light most favorable to Plaintiff, the Court concludes "it is relatively clear, rather than merely speculative" that Defendant need not know the identity of Member A to understand and respond to the complaint. *Id.* The complaint says the Program's race eligibility requirement harms Member A because it prevents her from applying for the Program's benefits. Dkt. # 1 at 3. Knowing Member A's identity is unnecessary for Defendant to understand and respond to these allegations. So, at the pleading stage, Member A need not be identified by name before Plaintiff can meet the first requirement of associational standing.[3] Thus, if Member A has standing to sue in her own right then FAIR has associational standing to sue. But if Member A lacks standing to sue in her own right then FAIR's complaint must be dismissed.

2.  Individual Standing

To demonstrate individual standing, a plaintiff must show (1) she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

---

[3] But Plaintiff will not be allowed to rely solely on mere allegations to establish standing in the later stages of this case. *Lujan*, 504 U.S. at 561 (each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

ORDER RE: MOTION TO DISMISS - 6

hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. 167, 181 (2000) (citing *Lujan*, 504 U.S. at 560–61).

Defendant says Member A does not have Article III standing for two reasons. First, he says she has not demonstrated that she qualifies for a primary mortgage; thus, she does not meet a race-neutral precondition for the secondary mortgage benefits offered through the Covenant Homeownership Program. Dkt. # 22 at 7. Defendant argues that Member A may never meet this precondition, so her alleged injury is too speculative to demonstrate standing. *Id.* Second, he says Member A provides only conclusory statements to support her contention that she meets the Program's income and residency requirements. *Id.* at 7. He says that once Defendant lodged a factual attack on these allegations under Rule 12(b)(1), Member A needed to provide affidavits or other evidence to support her claims. *Id.* at 17. Consequently, Defendant asserts that Member A does not meet the standing requirements and Plaintiff's claims must be dismissed.

Plaintiff responds that Member A shows an "injury in fact" because she cannot compete equally with other applicants for homebuyer assistance from the Covenant Homeownership Program because of the state's race-based preferences. Dkt. # 19 at 12. It says that Member A need not demonstrate that she would obtain a loan under the Program to show the state prevents her from competing for that loan on an equal basis. *Id.* And Plaintiff says that Member A's prior efforts to obtain government homebuying assistance demonstrate her intention to apply for the Program and use the benefits to buy a home. *Id.* at 17. Plaintiff says that this shows Member A has standing to pursue her claims for declaratory and injunctive relief. *Id.* at 18.

The Supreme Court has explained that a plaintiff who seeks to challenge a government program under the Equal Protection Clause must show she is "able and ready" to apply for the program's benefits, but an allegedly discriminatory policy prevents her from doing so on an

ORDER RE: MOTION TO DISMISS - 7

equal basis. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). In that case, the contractor plaintiffs challenged a city ordinance that required about 10% of the spending on city contracts to be set aside each fiscal year for "Minority Business Enterprises" (MBEs). *Id.* at 658. The plaintiffs alleged that many of their members regularly bid on and performed construction work for the city of Jacksonville. *Id.* at 659. These plaintiffs also alleged they would have bid on contracts set aside for MBEs but were prevented from doing so by the ordinance. *Id.* The Court reviewed its prior decisions and reaffirmed that a plaintiff challenging a barrier to government benefits does not need to allege she "would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666. The "injury-in-fact" in an equal protection case like this, the Court explained, is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* So, to establish standing, the plaintiffs needed to show they were "able and ready to bid on contracts and that a discriminatory policy prevent[ed them] from doing so on an equal basis." *Id.* Because it was undisputed that plaintiffs' regularly bid on construction contracts in Jacksonville and—if not for the ordinance—they would have bid on contracts set aside for MBEs, the Court concluded it was inappropriate for the Court of Appeals to dismiss plaintiffs' complaint for lack of standing and the case was remanded for further proceedings. *Id.* at 668–69.

Member A does not satisfy this requirement because she does not demonstrate that she is "able and ready" to apply for the Covenant Homeownership Program's benefits. Although Member A alleges that she meets the Program's first-time homebuyer, household income, and residency criteria, she does not allege that she qualifies for one of the primary mortgage loans that can be used in conjunction with the Program. Dkt. # 1; *see* Dkt. ## 15-2; 20. To be clear, Member A does not need "to first take out a partial loan for a home she could not afford, and

ORDER RE: MOTION TO DISMISS - 8

then apply for the Covenant Homeownership Program, a program she is categorically ineligible for." Dkt. # 19 at 7.  But she does need to show that she qualifies for the sort of primary mortgage that can be used in combination with the Program to demonstrate she is "able and ready" to apply for the Program's benefits.  *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 668–69.  The failure to qualify for an appropriate primary mortgage is fatal to Member A's standing arguments because the Program's downpayment and closing cost benefits can be used only in conjunction with a primary mortgage.  Dkt. # 1-1 at 2.  So, even if the barrier to government benefits that Plaintiff challenges was removed, Member A's eligibility to apply for the Program is currently conjecture.  Put differently, Member A has not established that the allegedly discriminatory policy is what is preventing her from applying for the Program's benefits.  Thus, Member A's alleged injury is too speculative and does not demonstrate Article III standing.

Simply because Member A received a VA Home Loan Certificate of Eligibility and sought out other forms of homebuying assistance does not show that she qualifies for a primary mortgage that can be used with the Program.  Dkt. # 20 at 2.  For instance, even though she received a VA Certificate of Eligibility, Member A must also meet credit, income, and occupancy requirements from the VA and her lender before she receives financing for a VA-backed home loan.  *See* Dkt. # 22 at 10.  Member A does not mention these requirements or claim to meet them.  *See* Dkts. ## 1, 20.  The fact that Member A has availed herself of other forms of homebuying assistance does not change the Court's conclusion that Member A lacks standing because she has not demonstrated she qualifies for a primary mortgage that can be used in combination with the Program.

In addition, unlike the defendant in *Northeastern Florida Chapter of Associated General Contractors of America*, Defendant here challenges Member A's standing under Rule 12(b)(1)

ORDER RE: MOTION TO DISMISS - 9

by contesting the truth of her claim that she meets the Program's race-neutral eligibility requirements.  508 U.S. at 668–69; *see Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 n.6 (9th Cir. 2024) ("A factual attack on jurisdiction 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'") (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  Defendant introduced evidence from the Washington State Housing Finance Commission's website that shows Member A does not meet all the Program's race-neutral eligibility requirements, and Defendant introduced this evidence to challenge Member A's standing.  Dkt. ## 14 at 19–26; 15-1, 15-2, 15-3, 15-4.  In response, Plaintiff needed to support its standing arguments with "competent proof" under the same evidentiary standard that governs in the context of summary judgment.  *Leite*, 749 F.3d at 1121.  Plaintiff failed to do so.  Instead, Plaintiff submitted the declaration of Monica Harris, its Executive Director, that is "based on information and belief."  Dkt. # 20 at 1.  Declarations "based on information and belief" are entitled to no weight at summary judgment because the declarant lacks personal knowledge.  *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995).  Accordingly, the Harris Declaration is not "competent proof."  Plaintiff's claims about Member A's standing in this declaration are unsupported by the appropriate proof and similarly fail to alter the Court's conclusion that Member A lacks standing to sue in her own right.

C.  Nominal Damages

Unlike the other claims, Plaintiff's claim for nominal damages is dismissed with prejudice because amendment would not change the conclusion that this claim is barred by the Eleventh Amendment.  Dkt. # 1 at 7.

Plaintiff sues Defendant, Steve Walker, for injunctive relief in his official capacity and suit is properly brought against Mr. Walker because he "would be responsible for implementing any injunctive relief."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 799 (9th Cir. 2019) (quoting

ORDER RE: MOTION TO DISMISS - 10

*Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)); *see* Dkt. ## 1 at 3; 19 at 21.  But this also means, as a state officer being sued in his official capacity, he is immune "from liability in damages, including nominal damages" in federal court under the Eleventh Amendment.  *Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021) (internal citation omitted); *see Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities.").

D.   Leave to Amend

Because Plaintiff has not demonstrated Member A has standing to sue in her own right, FAIR cannot bring a claim on behalf of its members and the complaint must be dismissed.  *Friends of the Earth*, 528 U.S. at 181; *Arbaugh*, 546 U.S. at 514.  But the Court grants Plaintiff leave to amend its complaint because amendment could fix the pleading defects.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."); *see* Dkt. # 19 at 22 (asking for leave to amend if the complaint is dismissed).

## IV

### CONCLUSION

For all these reasons, the Court GRANTS the motion and DISMISSES the claim for nominal damages with prejudice and the remaining claims without prejudice. Dkt. # 14. The Court GRANTS Plaintiff leave until July 8, 2025, to file an amended complaint.

Dated this 24th day of June, 2025.

John H. Chun
United States District Judge