Hon. John H. Chun

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE AND RACISM, INC. | Civil Action No. 2:24-cv-01770-JHC |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |
| STEVE WALKER, in his official capacity as Executive Director of the Washington State Housing Finance Commission, | **Note on Motion Calendar Aug. 22, 2025** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

   I.   The Covenant Homeownership Act .................................................................. 2

   II.  The Covenant Homeownership Program Discriminates on the Basis of Race 3

   III. The State's Program Excludes Members of Plaintiff Foundation Against Intolerance and Racism (FAIR) Because of Race ............................................. 5

LEGAL STANDARD ............................................................................................................. 6

Mot. for Preliminary Injunctive Relief - i  
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation  
1425 Broadway, #429  
Seattle, Washington 98122  
(425) 576-0484

ARGUMENT .................................................................................................................. 6

  I.    Plaintiff Is Likely to Prevail on the Merits Because the Race-Based Program Fails Strict Scrutiny ................................................................................................. 6

     A.    The Race-Based Program Does Not Advance a Compelling Government Interest ................................................................................ 7

     B.    The Race-Based Program Is Not Narrowly Tailored ............................... 10

  II.   Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction. 12

  III.  The Balance of Harms Weighs in Favor of the Plaintiff, and the Public Interest Would Be Served by the Issuance of a Preliminary Injunction ..... 13

  IV.  No Security Should Be Required .................................................................... 13

CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adarand Constructors, Inc. v. Peña*,
  515 U.S. 200 (1995) ................................................................................................. 6

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ................................................................................. 6

*Buchanan v. Warley*,
  245 U.S. 60 (1917) ................................................................................................... 9

*CAT Scale Co. v. Conico Toro, Inc.*,
  No. 2:24-CV-03396-WLH-JC, 2024 WL 4875387
  (C.D. Cal. Nov. 12, 2024) ........................................................................................ 2

*City of Richmond v. J.A. Croson Co.*,
  488 U.S. 469 (1989) ............................................................................................... 10

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ................................................................................. 14

*Earth Island Inst. v. U.S. Forest Serv.*,
  351 F.3d 1291 (9th. Cir. 2003) ............................................................................. 12

*Ford v. Wisconsin Real Estate Examining Bd.*,
  48 Wis.2d 91 (1970) ................................................................................................ 9

*Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) ............................................. 12

Mot. for Preliminary Injunctive Relief - ii
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) .................................................. 12
*Johnson v. California*, 543 U.S. 499 (2005) ...................................................................... 6
*Kahawaiolaa v. Norton*, 386 F.3d 1271 (9th Cir. 2004) ................................................. 6
*Landwatch v. Connaughton*,
    905 F. Supp. 2d 1192 (D. Or. 2012) ........................................................................ 14
*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ....................................................... 13
*Metro Broad., Inc. v. F.C.C.*, 497 U.S. 547 (1990) ......................................................... 10
*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) .................................................................................... 12
*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972) ..................................................................................................... 9
*Ne. Fla. Ch. of Assoc. Gen. Contractors v. City of Jacksonville*,
    508 U.S. 656 (1993) ................................................................................................... 12
*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007) ..................................................................................................... 6
*Porretti v. Dzurenda*, 11 F.4th 1037 (9th Cir. 2021) .................................................... 13
*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978) ............................................................................................. 7, 11
*Reitman v. Mulkey*, 387 U.S. 369 (1967) ................................................................. 9, 10
*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .................................................................................. 13
*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
    Coll.*, 600 U.S. 181 (2023) ............................................................. 6, 7, 8, 9, 10, 11
*People of State of Cal. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*,
    766 F.2d 1319 (9th Cir. 1985) .................................................................................. 14
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................................... 6
*Wygant v. Jackson Bd. of Educ.*,
    476 U.S. 267 (1986) ..................................................................................................... 8
*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) .................................................................................... 13

**Statutes**

2023 Wash. Sess. Laws ch. 340,
    https://legiscan.com/WA/text/HB1474/id/2809775 ............................................... 2

Mot. for Preliminary Injunctive Relief - iii
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff Foundation Against Intolerance and Racism, Inc., hereby respectfully requests a preliminary injunction to enjoin Defendant Steve Walker, in his official capacity as Executive Director of the Washington State Housing Finance Commission, and his agents from implementing the Covenant Homeownership Program's race-based eligibility requirements. The state has recently expanded the program by enlarging the pool of applicants that can be eligible for the program's race-based eligibility preferences. This expansion will be effective on July 27, 2025. A preliminary injunction is needed prior to or close to this effective date to prevent further injury to the constitutional rights of Plaintiff's members and other disadvantaged homebuyers of disfavored races that the state excludes from the Program.

## INTRODUCTION

Several members of the Foundation Against Intolerance and Racism (FAIR) reside in the State of Washington and would like to take advantage of a state program that will help them pursue the American dream of purchasing a home. But the Washington State Housing Finance Commission's Covenant Homeownership Program excludes them from being considered for first-time homebuyer assistance, solely because of their race.

Such racial discrimination is unlawful and obviously so. As case after case by the Supreme Court make clear, the state's use of race in the Program's eligibility criteria violates the constitutional right to equal protection guaranteed to all Americans by the Fourteenth Amendment.

FAIR is likely to succeed on the merits of its equal protection challenge against the state. The Covenant Homeownership Program undeniably distributes government benefits on the basis of race, which means that the Court must apply strict scrutiny. Because the Program neither advances a compelling government interest, nor is narrowly tailored to one, it cannot survive judicial review.

It is well-established that the violation of constitutional rights (here, the right

Mot. for Preliminary Injunctive Relief - 1
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

to equal protection) constitutes irreparable harm, and that preventing the violation of constitutional rights is in the public interest. In contrast, the government's "right" to continue to engage in racial discrimination when assisting first-time homebuyers holds little or no weight. The State of Washington will continue to deprive FAIR's members of their constitutional rights since the state expanded the discriminatory program by increasing the number of homebuyers eligible for the program's racially preferential assistance. The state continues to shut these members out of the Program and has not demonstrated any plans to refrain from this discriminatory conduct in the foreseeable future.

Accordingly, the Court should grant preliminary injunctive relief by enjoining the government from enforcing the racial eligibility criteria of the Covenant Homeownership Program until this case has been decided on the merits.

## STATEMENT OF FACTS

### I.    The Covenant Homeownership Act

On May 8, 2023, Washington Governor Jay Inslee signed HB 1474, the Covenant Homeownership Act. It directed the Washington State Housing Finance Commission (Commission) to design, develop, implement, and evaluate one or more special purpose credit programs to "reduce racial disparities in homeownership in the state" by providing down payment and closing cost assistance. 2023 Wash. Sess. Laws ch. 340.[1]

The Act requires the state to use race in deciding who is eligible to receive assistance from a resultant program. While it directs the Commission to complete a study that analyzes whether race-neutral approaches have been insufficient to

---

[1] https://legiscan.com/WA/text/HB1474/id/2809775. Plaintiff requests that the Court take judicial notice of this content and other state legislation cited herein because they are matters of public record that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *CAT Scale Co. v. Conico Toro, Inc.*, No. 2:24-CV-03396-WLH-JC, 2024 WL 4875387, at *2 (C.D. Cal. Nov. 12, 2024).

Mot. for Preliminary Injunctive Relief - 2
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

remedy housing discrimination, it preemptively declares that race-neutral approaches in state and federal programs are insufficient. *Id.* §§ 1, 5.

Accordingly, the Commission completed a study that inevitably concluded—as it was required to do—that an assistance program that fails to focus on racial groups would be ineffective in eliminating present racial disparities. *See* Declaration of Andrew R. Quinio (Quinio Decl.), Ex. A, Covenant Homeownership Program FAQ's at 7, 10–11; and Ex. B., Washington State Covenant Homeownership Program Study ("Study") at 5–7. The study does not link the disparities to intentional government discrimination. The study fails to investigate the cause of racial disparities in homeownership rates and instead asserts that all disparities between groups are the result of discrimination.

## II. The Covenant Homeownership Program Discriminates on the Basis of Race

On July 1, 2024, the Commission launched the Covenant Homeownership Program. The Program offers downpayment and closing cost assistance for first-time homebuyers in the form of a zero-interest secondary mortgage loan. Dkt. No. 28, First Amended Complaint (FAC), ¶ 12.

To be eligible for the Program, applicants must meet certain requirements:

- The applicant must have a household income at or below 100% of the median income of the county in which he or she is buying the home. Quinio Decl., Ex. A at 4–5,
- The applicant must be a "first-time homebuyer." The statute defines first-time homebuyer to include an applicant:

  (1) who has not owned a home within the past three years;

  (2) who is a single parent and has only owned a home while married to a former spouse;

  (3) who is a displaced homemaker and has only owned a home with a spouse;

  (4) who previously only owned a manufactured home; or

Mot. for Preliminary Injunctive Relief - 3
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

    (5) who previously owned property determined to be uninhabitable. *Id.* at 4, 6.

- The applicant or their parent, grandparent, or great-grandparent must have lived in Washington state before April 1968. *Id.* at 5.

Lastly, eligibility for the Program's benefits is restricted to individuals of a preferred race, or individuals whose parent, grandparent, or great-grandparent is a member of a preferred race. In particular, only an applicant or an applicant whose parent, grandparent, or great-grandparent is black, Hispanic, Native American/Alaska Native, Native Hawaiian or other Pacific Islander, Korean, or Asian Indian is eligible to apply for the Program. Pacific Islander includes individuals with origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands, including Samoan, Chamorro, Tongan, Fijian, and Marshallese. *Id.* at 4–5.

Individuals and their ancestors who are not from a preferred race, including Japanese-Americans, Filipino-Americans, Jewish-Americans, Arab-Americans, and Caucasian-Americans, are categorically ineligible for the Program. *See id.*

The Program homebuyers "must provide documentation of the residency and race/ethnicity of the person (whether the homebuyer themselves or their parent/grandparent/great-grandparent) who lived in Washington state before April 1968." The Commission is as flexible as possible in accepting documentation demonstrating race and residency. *Id.* at 7.

Importantly, the Commission does not require proof from any individual applicant that he or she or their parent, grandparent, or great grandparent personally experienced racial discrimination when attempting to buy a home. *Id.* at 6–7.

On April 22, 2025, the state enacted HB 1696, which modified the Covenant Homeownership Act by expanding the maximum income level of eligibility for the Program. Homebuyers earning up to 120% of area median income will be eligible. The bill did not eliminate any of the racial criteria. Rather, more applicants could benefit

Mot. for Preliminary Injunctive Relief - 4  
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation  
1425 Broadway, #429  
Seattle, Washington 98122  
(425) 576-0484

from the Program's existing racial preferences since an applicant could have a higher income and still qualify. Racial qualification is still a prerequisite to eligibility. The expansion becomes effective on July 27, 2025. Dkt. No. 23-1, Ex. A to Notice of Supplemental Authority at 3.

## III. The State's Program Excludes Members of Plaintiff Foundation Against Intolerance and Racism (FAIR) Because of Race

Plaintiff Foundation Against Intolerance and Racism, Inc., is a nonprofit organization established to defend the principle of equal protection and equal rights for all. FAIR engages in litigation to ensure that diversity and inclusion efforts are non-discriminatory. FAIR also works at the grassroots level to promote a common culture based on universal equality and fairness. Declaration of Monica Harris in Support of Plaintiff's Mot. for Preliminary Injunction (Harris Decl.) at ¶ 3.

At least one of FAIR's members is ready, willing, and able to apply and be considered for the Program, and would be eligible for the Program's benefits if they were of a different racial group. Harris Decl. at ¶¶ 5–7.

Specifically, FAIR Member "A" resides in Washington and wishes to buy a home in the state. She identifies as European-American. But for her race, Member A meets the first-time homebuyer criteria required by the Program:

- she is a first-time homebuyer;
- her household income is at or below the median income of the county where she resides and is interested in buying a home;
- she and her parents lived in Washington before April 1968. *Id.* ¶ 5.

In addition, Member A meets the requirements to qualify for a primary mortgage loan that can be used in conjunction with the Program. She prequalifies for a primary mortgage with a 30-year fixed interest rate of 6.5% and a $36,500 downpayment with assistance from the Covenant Homeownership Program. She also completed a Commission-sponsored homebuyer education class. Member A is ready,

Mot. for Preliminary Injunctive Relief - 5
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

willing, and able to apply and be considered for a loan provided under the Program. FAC ¶¶ 6–7; Harris Decl. ¶¶ 5–6.

## LEGAL STANDARD

To secure a preliminary injunction, a plaintiff must show that he is "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). FAIR satisfies each of these four requirements.

## ARGUMENT

### I. Plaintiff Is Likely to Prevail on the Merits Because the Race-Based Program Fails Strict Scrutiny

FAIR is likely to succeed in proving that the race-based eligibility preferences of Defendant's Covenant Homeownership Program violate the Equal Protection Clause. The Program explicitly conditions the Program's benefits on the race of the homebuyer or the parent/grandparent/great-grandparent of the homebuyer. Quinio Decl., Ex. A at 4–6. As such, the Program must satisfy strict scrutiny because it "distributes [] benefits on the basis of individual racial classifications[.]" *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007); *see also Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004) ("Strict scrutiny is applied when the classification is made on 'suspect' grounds such as race, ancestry, alienage. . . .").

Under strict scrutiny's "daunting two-step examination," *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023), the government has the burden of proving that racial classifications both (1) further a compelling governmental interest, and (2) are narrowly tailored to further that interest. *Johnson v. California*, 543 U.S. 499, 505 (2005) (citing *Adarand*

Mot. for Preliminary Injunctive Relief - 6
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

*Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995)). The race-based eligibility preferences of the state's Program fail both requirements.

### A.     The Race-Based Program Does Not Advance a Compelling Government Interest

Outside of the realm of education, the Supreme Court has recognized only two government interests as sufficiently "compelling" to justify racial classifications: 1) "remediating *specific, identified* instances of past discrimination," and 2) "avoiding imminent and serious risks to human safety in prisons[.]" *Students for Fair Admissions*, 600 U.S. at 207 (emphasis added). The latter interest is clearly inapplicable to this case. And the former interest is not what the Program advances.

The Program makes no attempt to remedy specific, identified instances of discrimination. It doesn't identify any such instances that it purports to remedy. Instead, the Program seeks to remedy racial disparities. Quinio Decl., Ex. A at 10–12. The Program engages in preferential treatment of certain racial groups with the goal of redressing a perceived deficit of those groups' representation in a particular category (i.e., Washington homeowners).

But under the Constitution, this is not even a *legitimate* government interest—let alone a compelling interest. The Supreme Court has recognized that the goal of "reducing [a] historic deficit" is equivalent to preferring members of a group "for no reason other than race or ethnic origin." *Students for Fair Admissions*, 600 U.S. at 208–209 (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 306–307 (1978)). Such a race-centric goal constitutes "discrimination for its own sake," and the Constitution forbids it. *Students for Fair Admissions*, 600 U.S. at 209. And increasing the representation of certain racial groups in a particular socioeconomic category (such as homeowners) has *never* been recognized as a compelling government interest capable of surviving strict scrutiny.

Furthermore, the Defendant fails to identify a past discriminatory action *by the state government* that the Program remedies. Most of the Study that the

Mot. for Preliminary Injunctive Relief - 7
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

challenged program stems from is simply not relevant to the constitutional analysis. Purely private "societal" discrimination in the past by non-government actors that the Study identifies—no matter how deplorable—has never been sufficient to justify a race-conscious policy by the government in the present. *Id.* at 226. And discrimination by government actors other than the State of Washington cannot be the basis for a *Washington* government actor to undertake race-conscious remedial actions. This is because the Supreme Court requires "some showing of prior discrimination *by the governmental unit involved* before allowing limited use of racial classifications in order to remedy such discrimination." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 274 (1986) (emphasis added).

For this reason, the instances of historical discrimination described in the Study are irrelevant to the Program's constitutionality. On page after page, the Study repeatedly cites actions taken by the federal government. Some of these actions were plainly discriminatory on their face (such as the expulsion of Native Americans in the 1800s, segregation of African-American defense workers during WWII, and the internment of Japanese-Americans), while others are considerably more debatable (e.g., the 1944 GI Bill and the 1956 Federal Highway Act).[2] Study at 15, 32, 35–37, 39 and 48. The State of Washington may, consistent with the Constitution, adopt race-conscious policies to remedy its *own* past discrimination. But it does not have wide-ranging power to correct all the discriminatory actions taken by the federal government over the past two centuries.

The primary act of discrimination attributed specifically to the State of Washington (as opposed to other government actors or private parties) is the granting of licenses to realtors who were or may have been involved with racially

---

[2] It should go without saying that a racial preference in a first-time homeownership stipend does *absolutely nothing whatsoever* to remedy discrimination caused by, for example, the 1944 GI Bill. But the tailoring failures of the law are addressed in the next section.

Mot. for Preliminary Injunctive Relief - 8  
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation  
1425 Broadway, #429  
Seattle, Washington 98122  
(425) 576-0484

discriminatory covenants.[3] Study at 27. But remedial action must be targeted against past government discrimination that "violated the Constitution or a statute." *Students for Fair Admissions*, 600 U.S. at 207. The State of Washington's granting of real estate licenses to realtors does not rise to that level. Courts have "never held . . . that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972). Consequently, a state government, by merely granting a license to a private party who discriminates, has not engaged in discriminatory state action in violation of the Equal Protection Clause. *Id.* at 177. *See also Ford v. Wisconsin Real Estate Examining Bd.*, 48 Wis.2d 91 (1970).

Nor has the Defendant identified acts of housing discrimination by the State of Washington that violated a statute. Instead, the state decries the failure of Washington to ban housing discrimination prior to the passage of the federal Fair Housing Act in 1968. Study at 43–44. But the failure of a state to pass laws forbidding discrimination does not rise to the level of state action. Even a state's *repeal* of an anti-discrimination law, without more, likely would not rise to that level. *Reitman v. Mulkey*, 387 U.S. 369, 376 (1967). Only when a state's actions "encourage and

---

[3] Other claims of state government discrimination in housing made by the Study are even more questionable. For example, the Study points to Washington zoning laws as contributing to racial segregation. Study at 20–24. Yet the Study admits that these zoning laws were implemented after the Supreme Court had outlawed racial zoning ordinances in *Buchanan v. Warley*, 245 U.S. 60 (1917), and thus, the laws "could not be explicit" in their alleged discriminatory intent. Study at 20. While it is possible that Washington zoning laws violated the Constitution or a statute, the state has failed to show that this was indeed the case—and the burden of proof rests with the government. The Study also points to Washington urban renewal policies as racially discriminatory. *Id.* at 39–40. But again, these policies were not racially discriminatory on their face. Merely noting that urban renewal displaced some minorities (as well as non-minorities) is insufficient to show that those policies violated the Constitution or a statute. Because the government points to these allegedly discriminatory past actions to justify *unequivocal* race discrimination in the present, the burden of proof rightly rests on the government.

Mot. for Preliminary Injunctive Relief - 9
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

significantly involve the State in private racial discrimination" can the failure of a state to provide legal protections against discrimination rise to the level of state action. *Id.*

Because the Defendant fails to demonstrate specific, identified instances of racial discrimination in housing perpetrated by the State of Washington that violated the Constitution or a statute, the Program lacks a compelling government interest and is unconstitutional.

### B. The Race-Based Program Is Not Narrowly Tailored

Even if a court were to find that the Program does advance a compelling government interest, it still plainly fails strict scrutiny because the Program is not narrowly tailored. A policy is not narrowly tailored if it is either "overbroad" or "underinclusive" in its use of racial classifications. *Students for Fair Admissions*, 600 U.S. at 216; *see also City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507–508 (1989). And because the Program is both overly broad *and* underinclusive, the Program is not narrowly tailored and is unconstitutional.

The Program is overbroad for a simple reason: the Program provides a government benefit to individuals based on race (either the individual's race, or the race of one of that individual's ancestors) without regard for whether those individuals (or their ancestors) *actually experienced* housing discrimination. The Program's rules do not require any showing that an individual or his or her ancestors experienced discrimination in order to qualify for the Program's benefits—instead, discrimination is improperly assumed based on group identity.[4] Individual experience with discrimination is not a prerequisite. Quinio Decl., Ex. A at 6. This sort of categorical assumption based on racial categories is the opposite of narrow tailoring. Because of this broad rule, individuals who have never experienced prior

---

[4] "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens 'as individuals, not "as simply components of a racial, religious, sexual or national class."'" *Metro Broad., Inc. v. F.C.C.*, 497 U.S. 547, 602 (1990) (O'Connor, J., dissenting).

Mot. for Preliminary Injunctive Relief - 10
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

discrimination are eligible for government benefits under the Program, solely because they belong to the "right" race.[5]

The Program is also woefully underinclusive. While the Program's purported goal is to remedy past discrimination, the state frankly admits that some groups who were discriminated against are categorically *ineligible* for the Program. *Id.* at 6. For example, the state admits that racially restrictive covenants discriminated against Jewish individuals. Study at 25, 93. Similarly, the Study devotes much time to documenting discrimination against people of Japanese origin. *Id.* at 35–38. Yet, the Program excludes both Jewish and Japanese individuals from its benefits. That is because the state admits that the Program only targets groups that have "significantly lower" homeownership rates than white Washingtonians. *Id.* at 5–6. This admission gives the game away. The State admits the program is designed to remedy racial disparities and has nothing to do with prior racial discrimination.[6]

The Program is both overbroad and underinclusive because it benefits

---

[5] Even if it were shown that a first-time homebuyer's ancestor was subject to discrimination, it is far from clear that this ought to entitle the ancestor's *descendant* to relief. An injury "'that may be ageless in its reach into the past' . . . cannot 'justify a [racial] classification that imposes disadvantages upon persons . . . who bear no responsibility for whatever harm the beneficiaries of the [race-based] admissions program are thought to have suffered.'" *Students for Fair Admissions*, 600 U.S. at 226 (quoting *Bakke*, 438 U.S. at 307, 310). For instance, the Program already fails to show intentional discrimination from the G.I. Bill. Extending the Program's benefits to homebuying descendants of individuals that the G.I. Bill purportedly disadvantaged would be based on an even more tenuous link between the harm and the current beneficiaries, causing the program to fail narrow tailoring.

[6] In the Study, the Defendant also notes that more than 50,000 racially restricted properties are on record in the State of Washington. *Id.* at 10. This is a remarkable admission: it means that the state can tailor a remedy for past discrimination to the *specific properties* where racial discrimination in housing is known to have been practiced. A policy focused on granting relief to specific individuals who were unlawfully refused the opportunity to purchase these houses would likely be narrowly tailored. Additionally, it would have the advantage of being firmly rooted in the historical record, rather than based on dubious categorical (and stereotypical) race-based inferences.

Mot. for Preliminary Injunctive Relief - 11
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

individuals who didn't experience discrimination, while excluding other individuals who did—solely because of their race. Because it is not narrowly tailored in its use of racial classifications, the Program is unconstitutional.

## II. Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction

A plaintiff's allegation that he is suffering an ongoing deprivation of his constitutional rights "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Under Ninth Circuit precedent, that includes deprivations of equal protection rights. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); *see also Hecox v. Little*, 479 F. Supp. 3d 930, 987 (D. Idaho 2020). Here, the strong likelihood of success on the merits of Plaintiff's constitutional claim suffices to demonstrate a likelihood of irreparable harm. *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1300 (9th. Cir. 2003) ("[T]he degree of irreparable harm required for a preliminary injunction increases as the probability of success on the merits decreases, and vice versa."). Even absent such a presumption, however, irreparable harm remains likely.

The injury in an equal protection case is denial of equal treatment—*not* the denial of a certain benefit or outcome. *See Ne. Fla. Ch. of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). And FAIR's members do not have to apply for the Program solely to be denied assistance to have an actionable injury, since the state injures FAIR's members by subjecting them to racially discriminatory application terms. This means that the injury is ongoing so long as Washington continues to deny FAIR's members an even playing field in applying for first-time homebuyer assistance because of their race. Notably, the state's expansion of the program without eliminating the racial eligibility barriers signals its intention to perpetuate the unconstitutional harm on individuals in disfavored racial categories. Because this ongoing denial of equal protection is a denial of constitutional rights, FAIR's members continue to suffer irreparable harm every day that the Program's

Mot. for Preliminary Injunctive Relief - 12
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

discriminatory policies remain in force.

### III. The Balance of Harms Weighs in Favor of the Plaintiff, and the Public Interest Would Be Served by the Issuance of a Preliminary Injunction

The final two preliminary injunction factors merge when the government is the opposing party. *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). The "balance of equities" concerns the burdens or hardships on the plaintiff compared with the burden on the defendant if an injunction is ordered, while the "public interest" mostly concerns the injunction's impact on nonparties rather than parties. *Id.*

The potential irreparable harm to FAIR's members outweighs any harm that a preliminary injunction would cause the state because the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); s*ee also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Moreover, it is always in the public interest to prevent the violation of a person's constitutional rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Enjoining the discriminatory eligibility criteria of the Covenant Homeownership Program would not harm any of the Program's applicants. First-time homebuyers who were discriminated against in the past could still apply for assistance because halting the race-based eligibility would merely open the Program to all applicants, regardless of race. The state could still provide first-time homebuyer assistance under the requested injunction; it just would not be able to do so based on race. In contrast, continuing the discriminatory eligibility would keep FAIR's members from applying for the Program, which would irreparably harm their constitutional rights.

### IV. No Security Should Be Required

No bond should be required in this case. "Federal courts have consistently waived the bond requirement in public interest . . . litigation, or required only a

Mot. for Preliminary Injunctive Relief - 13
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

nominal bond." *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) (citing *People of State of Cal. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319 (9th Cir. 1985)). Moreover, FAIR has established a strong likelihood of success and this "tips in favor of a minimal bond or no bond at all." *Van de Kamp*, 766 F.2d at 1326. Finally, "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction," and such is the case here. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Preliminary Injunction.

DATED: July 25, 2025.            Respectfully submitted:

PACIFIC LEGAL FOUNDATION

*s/ Wesley Hottot*
WESLEY HOTTOT, WSBA # 47539
1425 Broadway #429
Seattle, Washington 98122
Telephone: (425) 576-0484
WHottot@pacificlegal.org

 *s/ Andrew Quinio*
ANDREW QUINIO
California Bar # 288101 *
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
AQuinio@pacificlegal.org

 *s/ Christopher D. Barnewolt*
CHRISTOPHER D. BARNEWOLT
D.C. Bar # 90020413 *
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
CBarnewolt@pacificlegal.org

*Counsel for Plaintiffs*
\* *Pro hac vice*

Mot. for Preliminary Injunctive Relief - 14
Case No. 2:24-cv-01770-JHC

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484